[No. 44135.    En Banc.    December 16, 1976.]

SHARON LEONARD, ET AL, *Appellants*, v. THE CITY OF BOTHELL,
ET AL, *Respondents.*

*William J. Van Natter,* for appellants.

848

*Philip L. Carter* (of *Powell, Livengood, Silvernale, Carter & Tjossem*), and *John Hallock,* for respondent City of Bothell, et al.

*Jerome L. Hillis* and *Peter L. Buck* (of *Hillis, Phillips, Cairncross, Clark & Martin, P.S.*), for respondent Vitulli, et al.

*Lee Kraft* and *Laurence G. Nord, Jr.,* on behalf of City of Bellevue, amici curiae.

HAMILTON, J.—Appellants, Sharon Leonard, et al, seek to obtain a referendum election on an ordinance adopted by respondent, the City of Bothell.

Intervenors, Domenico Vitulli, et al, owned a 141-acre lot in the North Creek Valley in Bothell, Washington. The City originally zoned the property for agricultural use. Now, however, the land is more suitable for commercial development, and intervenors applied for a rezone of the property in order to build a regional shopping center.

Respondent prepared a comprehensive environmental impact statement, and its planning commission held 13 public meetings and 10 public hearings on the matter. On September 19, 1974, the commission voted 6 to 0 to modify the comprehensive city plan and rezone the area to allow the regional shopping center.

Respondent's city council considered this matter at 24 public meetings and two public hearings. The council also conducted a citywide advisory ballot in which the registered voters expressed their approval of the rezone. On February 18, 1975, the council passed ordinance No. 754, which rezoned the property from agricultural to community business, modified the city plan to allow the regional shopping center, and changed the Vitulli farm area description in the plan from "Greenbelt Agricultural to Commercial."

Appellants timely filed a referendum petition challenging ordinance No. 754, and the Bothell city clerk certified this petition. On April 7, 1975, the city council refused to order a referendum election. Appellants filed a complaint in superior court seeking a writ of mandamus to compel the

referendum election. The Superior Court granted summary judgment in respondent's favor, and appellants appeal from this judgment.

■ On June 10, 1976, King County Superior Court by oral memorandum invalidated ordinance No. 754, finding that the rezone was an illegal spot zone and that the planning commission violated the appearance of fairness doctrine. If the invalidation stands, then there exists no ordinance to submit to the people in a referendum election. This could render the present case moot, and we normally do not review moot cases or proceedings. *Wilson v. Butcher*, 69 Wn.2d 48, 416 P.2d 359 (1966); *Rosling v. Seattle Bldg. & Constr. Trades Council*, 62 Wn.2d 905, 385 P.2d 29 (1963); *Friendly Fin. Corp. v. Koster*, 45 Wn.2d 374, 274 P.2d 586 (1954). This court will, however, review a case which has become moot if it involves matters of substantial public interest. *Hartman v. State Game Comm'n*, 85 Wn.2d 176, 532 P.2d 614 (1975); *Sorenson v. Bellingham*, 80 Wn.2d 547, 496 P.2d 512 (1972); *National Elec. Contractors Ass'n v. Seattle School Dist. 1*, 66 Wn.2d 14, 400 P.2d 778 (1965); *R.W. Rhine, Inc. v. Tacoma*, 13 Wn. App. 597, 536 P.2d 677 (1975). We consider the following criteria to determine whether to hear such a case:

■ the public nature of the question presented, [2] the desirability of an authoritative determination for the future guidance of public officers, and [3] the likelihood of future recurrence of the question.

*Hartman v. State Game Comm'n, supra* at 177-78. These criteria are present in this case and favorably suggest a review on the merits.

Furthermore, and perhaps even more suggestive of the need for appellate review on the merits is the possibility that the decision invalidating ordinance No. 754 may be appealed, and, in the event of a reversal of that decision, the issue in this case would stand unresolved. We therefore proceed to the merits.

■ The subject matter of referendum elections is limited in scope to acts by a governmental body which are leg-

islative in nature. *See Durocher v. King County,* 80 Wn.2d 139, 155-56, 492 P.2d 547 (1972); *Ford v. Logan,* 79 Wn.2d 147, 154-55, 483 P.2d 1247 (1971). Administrative acts of municipal legislative bodies are not subject to a referendum election. *See* 5 E. McQuillin, *The Law of Municipal Corporations* § 16.55 (3d ed. 1969 rev. vol.). *Durocher v. King County, supra* at 152-53, quoting from 5 E. McQuillin, *supra* at 213, sets out the applicable tests for determining when an act is legislative in nature:

Actions relating to subjects of a permanent and general character are usually regarded as legislative, and those providing for subjects of a temporary and special character are regarded as administrative. . . .

The test of what is a legislative and what is an administrative proposition, with respect to the initiative or referendum, has further been said to be whether the proposition is one to make new law or to execute law already in existence. The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it.

Generally, when a municipality adopts a zoning code and a comprehensive plan, it acts in a legislative policy-making capacity. *Fleming v. Tacoma,* 81 Wn.2d 292, 299, 502 P.2d 327 (1972). Amendments of the zoning code, or rezones, usually are decisions by a municipal legislative body implementing the zoning code and a comprehensive plan. The legislative body essentially is then performing its administrative function.

We also have characterized rezone decisions as quasi-judicial acts by the municipal legislative body. *See Barrie v. Kitsap County,* 84 Wn.2d 579, 586, 527 P.2d 1377 (1974); *Buell v. Bremerton,* 80 Wn.2d 518, 495 P.2d 1358 (1972). In *Fleming v. Tacoma, supra* at 299, we stated:

[I]n amending a zoning code, or reclassifying land thereunder, the same body, in effect, makes an adjudication between the rights sought by the proponents and those claimed by the opponents of the zoning change. The parties whose interests are affected are readily identifi-

able. Although important questions of public policy may permeate a zoning amendment, the decision has a far greater impact on one group of citizens than on the public generally.

In this case, the comprehensive plan of the City contemplated the rezoning of the North Creek Valley for commercial purposes. It states:

> It is foreseeable that pressures will arise for commercial and other facilities within the North Creek Valley. The Comprehensive Plan does not at this time provide such uses, but is not to be construed as discouraging or prohibiting such more intensive uses. The Plan merely states that at this time the appropriate use is agriculture. At such time as needs arise for more intensive uses, and further study shows North Creek Valley appropriate to such uses, the City should entertain studies to effectuate land use change, and apply such controls and restrictions which may be necessary for orderly development.

The ordinance merely rezoned the property and modified the language of the plan to reflect the anticipated land-use change. We do not view the ordinance as a legislative policy-making decision, and thus it is not subject to a referendum election.

Our decision not to subject the ordinance to the referendum process is supported by a number of other jurisdictions. *See Elliott v. Clawson,* 21 Mich. App. 363, 175 N.W.2d 821 (1970); *Kelley v. John,* 162 Neb. 319, 75 N.W.2d 713 (1956); *Forman v. Eagle Thrifty Drugs & Markets, Inc.,* 89 Nev. 533, 516 P.2d 1234 (1973); *Sparta v. Spillane,* 125 N.J. Super. 519, 312 A.2d 154 (1973); *Hancock v. Rouse,* 437 S.W.2d 1 (Tex. Civ. App. 1969); *Dewey v. Doxey-Layton Realty Co.,* 3 Utah 2d 1, 277 P.2d 805 (1954); *cf. Scottsdale v. Superior Court,* 103 Ariz. 204, 439 P.2d 290 (1968); *Olson v. Avon,* 143 Conn. 448, 123 A.2d 279 (1956); *State ex rel. Powers v. Donohue,* 368 S.W.2d 432 (Mo. 1963); *Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 49 L. Ed. 2d 132, 96 S. Ct. 261 (1976) (collecting cases).

In *Kelley v. John, supra* at 323-24, the court refused to subject a rezoning decision to a referendum and held:

> To say that administrative determinations are subject to

referendum could defeat the very purposes of zoning. The uniformity required in the proper administration of a zoning ordinance could be wholly destroyed by referendum. A single decision by the electors by referendum could well destroy the very purpose of zoning where such decision was in conflict with the general scheme fixing the uses of property in designated areas. This alone is sufficient to sustain the holding that an ordinance, administrative in character, is not subject to referendum. It would permit the electors by referendum to change, delay, and defeat the real purposes of the comprehensive zoning ordinance by creating the chaotic sitiuation such ordinance was designed to prevent.

■ Appellants, however, cite RCW 35A.11.080[1] and RCW 35A.11.090[2] and claim these provisions vest them with the power to subject the ordinance to a referedum election. We disagree. Trautman, *Initiative and Referendum in Washington: A Survey,* 49 Wash. L. Rev. 55, 82-83 (1973), states:

In determining whether use of the local initiative or referendum in a particular instance violates a state statute, the court at times has drawn a distinction between a grant of authority by the state legislature to the city as a corporate entity and to its legislative and other corporate authorities. If the grant of power is to the city

---

[1] RCW 35A.11.080, in part, provides:

"The qualified electors of a noncharter code city may exercise the powers of initiative and referendum, . . ."

[2] "Ordinances of noncharter code cities the qualified electors of which have elected to exercise the powers of initiative and referendum shall not go into effect before thirty days from the time of final passage and are subject to referendum during the interim except:

"(1) Ordinances initiated by petition;

"(2) Ordinances necessary for immediate preservation of public peace, health, and safety or for the support of city government and its existing public institutions which contain a statement of urgency and are passed by unanimous vote of the council;

"(3) Ordinances providing for local improvement districts;

"(4) Ordinances appropriating money;

"(5) Ordinances providing for or approving collective bargaining;

"(6) Ordinances providing for the compensation of or working conditions of city employees; and

"(7) Ordinances authorizing or repealing the levy of taxes; which excepted ordinances shall go into effect as provided by the general law or by applicable sections of Title 35A RCW as now or hereafter amended." RCW 35A.11.090.

as a corporate entity, direct legislation is permissible insofar as the statute is concerned. On the other hand, if the grant of power is to the legislative authority of the city, the initiative and referendum are prohibited.

(Footnote omitted.)

In this case the legislative body of respondent is its city council. *See* RCW 35A.63.010(5). RCW 35A.11.020[3] and RCW 35A.63.072[4] vest the city council with the power to adopt and modify a zoning code. Thus, the legislature granted the power here exercised to the legislative body of respondent and not to the corporate entity. This grant of power precludes a referendum election. *See State ex rel. Guthrie v. Richland,* 80 Wn.2d 382, 494 P.2d 990 (1972); *State ex rel. Haas v. Pomeroy,* 50 Wn.2d 23, 308 P.2d 684 (1957).

■ Further, when a legislature enacts a law, it is presumed to be familiar with its prior enactments and judicial decisions. *See Daly v. Chapman,* 85 Wn.2d 780, 539 P.2d 831 (1975). The legislature added RCW 35A.11.080-.100 to the optional municipal code in 1973, and these provisions allow the electorate to utilize the initiative and referendum process in nonchartered code cities. This court should presume the legislature was aware of the provisions which granted the legislative body the power to control land-use matters.

---

[3]RCW 35A.11.020 states, in part: "The legislative body of each code city shall have all powers possible for a city or town to have under the Constitution of this state, and not specifically denied to code cities by law. By way of illustration and not in limitation, such powers may be exercised in regard to the acquisition, sale, ownership, improvement, maintenance, protection, restoration, regulation, use, leasing, disposition, vacation, abandonment or beautification of public ways, real property of all kinds, waterways, structures, or any other improvement or use of real or personal property, . . ."

[4]RCW 35A.63.072 provides, in part: "The legislative body within such period as it may by ordinance provide, shall vote to approve or disapprove or to modify and approve, as modified, the comprehensive plan or to refer it back to the planning agency for further proceedings, in which case the legislative body shall specify the time within which the planning agency shall report back to the legislative body its findings and recommendations on the matters referred to it. The final form and content of the comprehensive plan shall be determined by the legislative body."

This court should also presume the legislature was aware of the decisions of this court which preclude a referendum election when the legislature delegated the authority to the legislative body and not to the city as a corporate entity. By enacting RCW 35A.11.080-.100, the legislature did not intend to nullify or restrict the broad grants of power to the legislative bodies of cities.

Amendments to the zoning code or rezone decisions require an informed and intelligent choice by individuals who possess the expertise to consider the total economic, social, and physical characteristics of the community. Respondent's planning commission and city council normally possess the necessary expertise to make these difficult decisions. The State Environmental Policy Act of 1971 (SEPA), RCW 43.21C, emphasizes this need for carefully planned land-use decisions. SEPA requires the city council to prepare a detailed statement setting forth the environmental consequences of significant actions affecting the quality of the environment. RCW 43.21C.030. SEPA requires a sophisticated understanding of the environmental problems of the project. In this case, the City had before it an environmental impact statement which covers 160 pages, 6 appendices, and 102 comment letters received in response to the draft statement. In a referendum election, the voters may not have an adequate opportunity to read the environmental impact statement or any other relevant information concerning the proposed land-use change.

Even without the referendum election, the public here was not without a voice in the decision to rezone the North Creek Valley. Respondent conducted 37 public meetings and 12 public hearings to enable the electorate to discuss the future of the North Creek Valley. Finally, respondent conducted an advisory ballot to determine the electorate's position, and it approved the decision to rezone the property.

The judgment of the trial court is affirmed.

STAFFORD, C.J., and ROSELLINI, HUNTER, WRIGHT, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.