[No. 29120-3-I.    Division One.    April 13, 1992.]

GEOFFREY BIDWELL, ET AL, *Appellants,* v. THE CITY OF BELLEVUE, *Respondent.*

*J. Richard Aramburu,* for appellants.

*Richard L. Andrews, City Attorney,* and *David E. Kahn, Assistant; Paul J. Lawrence, Alison K. Campbell,* and *Preston Thorgrimson Shidler Gates & Ellis,* for respondent.

BAKER, J. — Geoffrey Bidwell and Dorothy Scheppke sued the City of Bellevue (City) to compel it to place an initiative on the ballot concerning the financing of the Bellevue Convention Center. They appeal from a summary judgment dismissing their action.

The initiative would require the Bellevue Convention Center Authority (BCCA) to obtain voter approval before issuing negotiable bonds or notes to finance construction of the convention center.

We affirm.

## FACTUAL BACKGROUND

The facts are essentially undisputed. The City appointed a citizen technical committee in 1988 to study the feasibility of constructing a convention center. In February 1989 the City completed an environmental impact statement and held a public hearing on the proposed project.

Shortly thereafter, the city council adopted resolution 5114, which established the scope of the convention center project and announced the council's intent to proceed with the design, financing, and construction of the center. The resolution further declared the council's intent to create a public corporation to construct and operate the convention center. In April 1989 the city manager was authorized to acquire the necessary property rights for the convention center, execute a contract for professional services, and select an architectural firm. In November 1989 a public meeting was held on the operation, financing, and site selection aspects of the project.

In December 1989 the council adopted four ordinances which essentially established the framework for implementation of the City's plans to construct a convention center: ordinance 4092 created the BCCA, a public corporation; ordinance 4093 authorized the city manager to execute a design, development, construction, financing, and operating agreement with the BCCA; ordinance 4094 approved a convention center backup finance plan; and ordinance 4097 authorized the city manager to execute lease agreements with the BCCA. BCCA's charter specifically authorized it to issue negotiable bonds and notes.

Under the lease agreements authorized by the city council, the City will lease the convention center site from the property owners and then sublease it to the BCCA. Upon

completion of construction, the BCCA will lease the convention center back to the City. The proceeds of the City's hotel/motel tax will be used to make lease payments.

Initiative 5 was filed with the city clerk in December 1990. The initiative proposed an amendment to the BCCA charter, requiring voter approval before the BCCA is authorized to issue negotiable bonds and notes. The city attorney advised the council that initiative 5 was not a proper subject for an initiative because it involved administrative acts; accordingly, the council passed a resolution refusing to adopt the initiative or place it on the ballot. In February 1991 appellants brought this action to compel the city council to place the initiative on the ballot.

The trial court granted the City's and BCCA's motion for summary judgment, concluding that the proposed initiative exceeds the scope of the initiative power.

## I

█ The power of the people to adopt legislation directly through the initiative process is limited to actions that are legislative in nature. *Ruano v. Spellman*, 81 Wn.2d 820, 823, 505 P.2d 447 (1973). In this context, an act is characterized as legislative or administrative according to the following test:

> Actions relating to subjects of a permanent and general character are usually regarded as legislative, and those providing for subjects of a temporary and special character are regarded as administrative. . . .
> The test of what is a legislative and what is an administrative proposition, with respect to the initiative or referendum, has further been said to be whether the proposition is one to make new law or to execute law already in existence. The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it.

*Seattle Bldg. & Constr. Trades Coun. v. Seattle*, 94 Wn.2d 740, 748, 620 P.2d 82 (1980); *see also Heider v. Seattle*, 100 Wn.2d 874, 675 P.2d 597 (1984); *Citizens v. Spokane*, 99 Wn.2d 339, 662 P.2d 845 (1983); *Ballasiotes v. Gardner*, 97

Wn.2d 191, 642 P.2d 397 (1982); *Leonard v. Bothell*, 87 Wn.2d 847, 557 P.2d 1306 (1976); *Ruano*, 81 Wn.2d at 823.

Appellants argue that the City's refusal to permit a vote on the initiative on grounds that only administrative acts remain was improper because (1) the City is not irrevocably committed to the construction of the convention center; and (2) the City continues to exercise legislative power over the project.

Appellants' first argument is based on *Paget v. Logan*, 78 Wn.2d 349, 474 P.2d 247 (1970), in which the Supreme Court ruled that an initiative concerning the site selection process for the Kingdome involved legislative, not administrative, functions and therefore was within the scope of the initiative process. The court characterized the site selection function as legislative because (1) under the applicable statute, the county's "governing body" was vested with the ultimate authority over site selection; and (2) the selection of a site for a public stadium involves "significant and inherently legislative problems" concerning traffic, parking, public transportation, and public services and utilities. *Paget*, 78 Wn.2d at 357.

In response to the argument that subjecting the site selection process to the initiative power would impair the efficiency of government, the court stated:

> [I]n the instant case development of the proposed project had not proceeded to a point where the county had become irretrievably bound to the proposed site. Irrevocable preparations for building on the recommended site had not commenced.

*Paget v. Logan*, 78 Wn.2d at 359. To the extent that the *Paget* court relied on the "irrevocable commitment" rationale in determining whether the site selection function was legislative or administrative, the Supreme Court has departed from that rationale in a line of subsequent cases. *Heider v. Seattle*, 100 Wn.2d 874, 675 P.2d 597 (1984); *Citizens for Financially Responsible Gov't v. Spokane*, 99 Wn.2d 339, 662 P.2d 845 (1983); *Ballasiotes v. Gardner*, 97 Wn.2d 191, 642 P.2d 397 (1982); *Seattle Bldg. & Constr.*

*Trades Coun. v. Seattle*, 94 Wn.2d 740, 620 P.2d 82 (1980); *Leonard v. Bothell*, 87 Wn.2d 847, 557 P.2d 1306 (1976); *Ruano v. Spellman*, 81 Wn.2d 820, 505 P.2d 447 (1973). Therefore, appellants' argument that the City is not irrevocably committed to the construction of the convention center has little bearing on the distinction between legislative and administrative acts under Washington case law.

Appellants further assert that the City later amended the ordinances adopted in December 1989 and that these subsequent amendments were legislative acts. Appellants argue that the City thus demonstrably continues to exercise legislative authority over the project even after submission of the initiative. The respondents, on the other hand, assert that all major policy decisions concerning the proposed convention center had been made by December 1989, and that actions taken thereafter were in furtherance of existing policy and therefore were administrative. We agree with respondents' argument.

By December 1989 the council had established the essential framework for implementation of the City's plans to construct a convention center. In a series of ordinances, the council authorized creation of the BCCA, authorized the city manager to execute an operating agreement with the BCCA, and approved a backup finance plan. The backup finance plan was the product of a task force formed by the City in August 1989 to recommend finance mechanisms for the project. The task force recommended against formation of a local improvement district (LID) due to anticipated difficulties in securing the support needed to create an LID. The task force recommendations were approved by a citizens committee and adopted by the council for incorporation into the convention center finance plan.

■ Subsequent actions taken by the City, including the adoption of ordinance 4228, were in furtherance of this existing policy. Although ordinance 4228 approved amendments to the operating and lease agreements between the City and the BCCA, the amendments did not set forth new law or policy; therefore, the council's adoption of ordinance

4228 was an administrative act as that term is used in this context. *See Seattle Bldg. & Constr. Trades Coun. v. Seattle*, 94 Wn.2d at 748.

## II

Respondents alternatively argue that even if the proposed initiative properly addressed legislative acts, it unlawfully conflicts with RCW 35.42.200, which authorizes the City to execute leases without submitting them to the voters if the lease does not result in a total indebtedness in excess of 1.5 percent of the City's taxable property. Because the debt resulting from the lease-purchase agreement in this case is estimated to be less than three-fourths of 1 percent of the value of the taxable property in the city of Bellevue, respondents contend the City is authorized by state law to enter into the lease agreement without submitting it to a vote by the people. *State ex rel. Guthrie v. Richland*, 80 Wn.2d 382, 494 P.2d 990 (1972).

██ We agree. In *Guthrie*, an initiative was found to be invalid because it would have limited or restricted a legislative grant of power to the City. The court interpreted the state statute at issue in that case as indicating legislative intent that certain steps could be taken by a city without being subjected to voter approval. Similarly here, a fair reading of RCW 35.42.200 bespeaks a legislative intent that a city may execute leases where the indebtedness limit is not exceeded without submitting the decision to do so for voter approval.

## III

Finally, we conclude that the proposed initiative would impair the BCCA's contracts in violation of the federal and state constitutions. Article 1, section 10 of the United States Constitution states that "[n]o state shall . . . pass any . . . law impairing the obligation of contracts . . .". Article 1, section 23 of the Washington State Constitution similarly provides that "[n]o . . . law impairing the obligations of contracts shall ever be passed." "It is fundamental that this prohibition reaches any form of legislative action, including

delegated legislative activity by a municipal corporation or even direct action by the people." *Ruano v. Spellman*, 81 Wn.2d at 825.

■ The constitutional prohibition against impairment of contracts is not an absolute one. *Carlstrom v. State*, 103 Wn.2d 391, 394, 694 P.2d 1 (1985). In evaluating whether legislation violates the contracts clause, the first issue is whether there is a substantial impairment of contractual obligations. Second, when a state "impairs its own contracts, the reviewing court must apply an independent analysis to determine if the impairment was 'reasonable and necessary'." *Carlstrom*, 103 Wn.2d at 394 (quoting *United States Trust Co. v. New Jersey*, 431 U.S. 1, 52 L. Ed. 2d 92, 97 S. Ct. 1505 (1977)).

In *Continental Ill. Nat'l Bank & Trust Co. v. Washington*, 696 F.2d 692 (9th Cir. 1983), plaintiffs brought an action challenging the constitutionality of an initiative requiring a vote on the issuance or sale of bonds to finance the construction or acquisition of any major public energy project. The Court of Appeals ruled that the initiative violated the contracts clause because it resulted in substantial impairment of contractual obligations and was not justified by the interest asserted.

In discussing the first question, whether the initiative constituted a substantial impairment of contract, the court stated "Initiative 394 adds a new and unpredictable element. . . . The addition of the referendum requirement is, we conclude, a severe impairment that defeats the expectations of the parties under their contracts." *Continental Illinois*, 696 F.2d at 700. The court went on to conclude that the impairment was not supported by reasonable and necessary justifications.

In this case, initiative 5 would require BCCA to obtain voter approval prior to issuing any revenue bonds. As in *Continental Illinois*, this would result in a substantial impairment defeating the expectations of the parties under their contracts. Further, the justification offered in support

of the initiative is that the public should be given the opportunity to vote on the bonds to finance the project. The public had substantial opportunity to participate in the early phases of the project when the policy decisions regarding all aspects of the project were made. There was no timely referendum challenge to the ordinances which adopted the convention center project and established its basic structure. The impairment here is not supported by reasonable and necessary justifications.

Affirmed.

WEBSTER, A.C.J., and KENNEDY, J., concur.

Review denied at 119 Wn.2d 1023 (1992).