**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**DECEMBER 7, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JEWELS HELPING HANDS; and BEN STUCKART, | ) | No. 39924-9-III |
| | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRIAN HANSEN, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent, | ) | |
| | ) | |
| CITY OF SPOKANE; SPOKANE COUNTY; and VICKY DALTON, in her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

PENNELL, J. — Jewels Helping Hands and Ben Stuckart (collectively Jewels) seek a judicial declaration invalidating an initiative placed on the November 2023 general election ballot in the city of Spokane. The initiative seeks to expand an existing ban on camping at certain locations within the city. Jewels argues the initiative: (1) improperly

No. 39924-9-III
*Jewels Helping Hands v. Hansen*

seeks to exercise powers reserved solely to the Spokane City Council, (2) impermissibly

conflicts with controlling state law, and (3) is outside the scope of the local initiative

power because the measure is administrative, not legislative, in character. We disagree

with these three arguments and therefore affirm the superior court.

FACTS

In 2022, the city of Spokane adopted Ordinance C36272. The ordinance created

several new sections in the portion of the Spokane Municipal Code (SMC) concerning

protection of public lands and properties, and amended several existing sections within

that same portion of the code.

Relevant to our purposes on review, Ordinance C36272 substantially expanded

SMC 12.02.1010, which concerns unauthorized camping on public property. The

existing section prohibited all camping on public property and provided a nonexhaustive

exemplary list of prohibited locations. Ordinance C36272 expanded that list and also

carved out specific provisions concerning camping at certain locations that would

otherwise fall within the existing prohibition. Ordinance C36272 prohibited camping

where it posed a substantial danger to any person, posed an immediate threat or

unreasonable risk of harm to public health or safety, or posed a disruption to vital

government services. Any campers caught violating one of those three prohibitions

No. 39924-9-III
*Jewels Helping Hands v. Hansen*

would be subject to expedited removal, regardless of the availability of shelter space.

Ordinance C36272 provided the same for campers found underneath, or within 50 feet

of, any railroad viaduct in downtown Spokane or within three blocks of any congregate

shelter. With respect to the broad, original camping ban, Ordinance C36272 expressly

limited its enforcement to times when overnight shelter space is available.

The purpose of Ordinance C36272 was to bring the city of Spokane into

compliance with *Martin v. City of Boise*, 902 F.3d 1031 (9th Cir. 2018), *amended on*

*reh'g*, 920 F.3d 584 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 674, 205 L. Ed. 2d 438

(2019). The *Martin* decision has been characterized by courts, lawyers, and others

as limiting cities' ability to enforce homeless camping bans when shelter space is

unavailable.

Local voter Brian Hansen was not satisfied with the scope of Ordinance C36272.

Mr. Hansen and his supporters desired further limitations on such camping regardless of

the availability of shelter space. To that end, Mr. Hansen proposed a city-wide initiative

expanding the list of no-camping-anytime locations to include:

> In public within one thousand (1,000) feet of the perimeter of the
> grounds of a park (SMC Section 12.06A.030(B&D)), a day care center or
> child care facility (RCW 35.63.170(3-4)), or a public or private school
> (RCW 28A.150.010 and RCW 28A.195.010).

No. 39924-9-III
*Jewels Helping Hands v. Hansen*

Clerk's Papers (CP) at 30.[1] Mr. Hansen and his supporters successfully gathered

sufficient signatures to qualify the initiative for the November 2023 ballot.

Local homeless advocates Jewels sued to enjoin placement of the initiative on the

ballot. They argued the initiative exceeds the scope of the local initiative power. Acting

under tight statutorily-mandated timelines, the superior court found the initiative to be

within the lawful scope of the local initiative power and dismissed Jewels's complaint for

declaratory and injunctive relief.

Jewels appealed to this court and also asked this court to issue an emergency

injunction prohibiting the initiative from appearing on the November ballot. Our court

commissioner granted the emergency injunction, finding the likely harm from potentially

placing an improper initiative on the ballot outweighed the potential harm of wrongfully

---

[1] This was apparently the second proposed version of the initiative. The initial version was potentially thought to be unconstitutionally void for vagueness due to the lack of definitions. The version at issue here was substituted with the addition of the parenthetical citations to existing definitions.

Furthermore, while not a relevant factor for deciding this case, it is noted that SMC 12.02.1010 already prohibits camping on public property within 1,000 feet of any park, day care center, child care facility, or public or private school. The prohibition is implicit in the existing blanket ban on camping on "any public property." SMC 12.02.1010(A)(1). Thus, the practical effect of the initiative is simply to exempt the existing ban as to these locations from the requirement that overnight shelter space be available prior to enforcing the ban.

No. 39924-9-III
*Jewels Helping Hands v. Hansen*

removing the initiative, given the potential remedy of ordering it to appear on a future ballot.

Due to the tight timelines under which everyone was operating under, our commissioner's ruling, granting a motion by Jewels for an emergency injunction pending appeal to keep the initiative off the November 2023 ballot, was issued with less than one day left before official ballots were required to be sent to print. Mr. Hansen immediately moved to modify the commissioner's ruling. In order to preserve the right of litigants to have their cases decided by a panel of elected judges, this court reviews de novo all commissioner rulings when requested by an aggrieved party. *See State v. Rolax*, 104 Wn.2d 129, 702 P.2d 1185 (1985). With less than one day before the ballot deadline, this court could not possibly perform its due diligence and reach the merits of the case prior to the printing of ballots. The emergency injunction was therefore lifted and the appeal was set for accelerated review.[2]

Election day occurred less than two weeks after oral argument in this case. We take judicial notice of the fact that the initiative passed by a large majority of the votes. ER 201. Our assessment of the parties' arguments is therefore essentially a

---

[2] Concurrently, Mr. Hansen also filed a motion to dismiss review of this matter as nonappealable. Because Mr. Hansen prevails on the merits of his case, we deny his motion as moot.

5

No. 39924-9-III
*Jewels Helping Hands v. Hansen*

post-election review.

ANALYSIS

We review de novo as a question of law whether a proposed initiative is beyond

the scope of the local initiative power. *City of Port Angeles v. Our Water-Our Choice!*,

170 Wn.2d 1, 7, 239 P.3d 589 (2010).

Courts may review the subject matter of local initiatives and referenda (either pre-

or post-election) to determine whether "'the proposed law is beyond the scope of

the initiative power.'" *Id*. (quoting *Seattle Bldg. & Constr. Trades Council v. City of*

*Seattle*, 94 Wn.2d 740, 746, 620 P.2d 82 (1980)).[3] Relevant here are three subject matter

limitations. First, a local initiative may not involve "'powers granted by the legislature

to the governing body of a city [i.e., the city council or mayor], rather than the city itself

[i.e., the electorate].'" *Spokane Entrepreneurial Ctr. v. Spokane Moves to Amend the*

*Const.*, 185 Wn.2d 97, 108, 369 P.3d 140 (2016) (quoting *City of Sequim v. Malkasian*,

157 Wn.2d 251, 261, 138 P.3d 943 (2006)). Second, the local initiative must not

conflict with state law. *Id*. And third, the subject matter must be legislative, rather than

---

[3] A subject matter challenge to an initiative or referendum is distinct from a substantive challenge. A substantive challenge, such as a challenge to the constitutionality of a given initiative or referendum, may only be made post-election. *Coppernoll v. Reed*, 155 Wn.2d 290, 297-98, 119 P.3d 318 (2005).

No. 39924-9-III
*Jewels Helping Hands v. Hansen*

administrative. *Id*. at 107. We address each in turn.

*1. Does the initiative seek to exercise powers delegated exclusively to the Spokane City Council?*

One of the criteria for exercising the local initiative power is the initiative must exercise a power granted to the municipality, as opposed to a power granted to the municipality's legislative body:

> "If the grant of power is to the city as a corporate entity, direct legislation is permissible insofar as the statute is concerned. On the other hand, if the grant of power is to the legislative authority of the city, the initiative and referendum are prohibited."

*Leonard v. City of Bothell*, 87 Wn.2d 847, 852-53, 557 P.2d 1306 (1976) (quoting Philip A. Trautman, *Initiative & Referendum in Wash.: A Survey*, 49 WASH. L. REV. 55, 82-83 (1973)).

The parties' dispute over whether the initiative falls exclusively within the power of the Spokane City Council turns on how to characterize the initiative. According to Jewels, the initiative is a zoning ordinance that falls within the exclusive powers of the city's legislative body. *See Leonard*, 87 Wn.2d at 853. Mr. Hansen counters that the initiative is an exercise of police powers, which is an appropriate subject for the electorate's involvement. *See* RCW 35.22.200. We agree with Mr. Hansen.

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39924-9-III
*Jewels Helping Hands v. Hansen*

*Scope of initiative*

Our first step in deciding how to characterize the initiative is determining its scope. The parties hotly contest whether the initiative would apply only to city-owned property or to all property, public and private. The initiative would add a subsection to SMC 12.02.1010(A)(3), consisting of a single sentence:

> c.      In public within one thousand (1,000) feet of the perimeter of the grounds of a park (SMC Section 12.06A.030(B&D)), a day care center or child care facility (RCW 35.63.170(3-4)), or a public or private school (RCW 28A.150.010 and RCW 28A.195.010).

CP at 30. Read in isolation, this language makes no distinction between public and private property.

A review of the two preceding subsections also fails to provide any public or private context. The next level up specifies what activities are prohibited in the locations described in the new subsection (c). The provision states:

> 3.      At all times . . . it is unlawful to camp or store personal property, including camp facilities and camp paraphernalia, or to have unauthorized encampments at any time in the following locations:

*Id*.

Moving up the next level in the code is similarly uninformative. It simply reads: "A. Prohibition." *Id*. at 29. The section heading above "A" provides some indication of where the prohibitions in "A" are intended to apply: "[SMC] 12.02.1010 Unauthorized

8

No. 39924-9-III
*Jewels Helping Hands v. Hansen*

Camping on Public Property—Violation." *Id.*

The heading indicates the section applies only to public property. All of the title, chapter and article headings leading to SMC 12.02.1010 similarly indicate this provision of the code is intended to apply only to public property: Title 12 ("Public Ways and Property"), Chapter 12.02 ("Obstruction, Encroachment of Public Ways"), and Article VI ("Protection of Public Lands and Properties").

Jewels, however, appropriately notes that section headings are ordinarily not considered to be part of a law. At the state level, this is often because a statute will specifically note that headings are not part of the law. *See, e.g.*, RCW 11.02.001; RCW 11.99.013; RCW 28B.900.050; RCW 29A.04.901; RCW 36.70A.902; RCW 42.17A.905; RCW 43.21C.911; RCW 47.98.030; RCW 48.32.920; RCW 70A.388.902; RCW 80.98.020; RCW 81.112.900; RCW 81.900.020. The same is true of the Spokane Municipal Code: "Chapter headings, section captions and similar catchlines . . . are not part of the code." SMC 01.01.050. Thus, the section, chapter, and title headings are irrelevant to determining the scope of SMC 12.02.1010.

Although the section headings are not law, other provisions of the applicable municipal code make it clear SMC 12.02.1010 applies only to public property. SMC 12.02.005 provides: "The purpose of this chapter is to regulate and control the

No. 39924-9-III
*Jewels Helping Hands v. Hansen*

obstruction of public rights-of-way in the City so that those rights-of-way remain accessible and safe for their intended public use." SMC 12.02.1000(B) provides: "It is the purpose of this chapter to set standards for the preservation of public lands and properties that prevent such harms from destroying these natural assets."

While the initiative and SMC 12.02.1010 do not specify their geographic limitations, SMC 12.02.005 and SMC 12.02.1000(B) limit application of the initiative and SMC 12.02.1010 to city-owned property.

The history behind the adoption of SMC 12.02.1010(A)(2) and (3) also supports finding the proposed initiative would apply only to city-owned property by virtue of the initiative's placement within subsection (A)(3). As discussed earlier, SMC 12.02.1010(A)(1) is the original blanket ban on camping on public property. SMC 12.02.1010(A)(1) specifically says it applies to only "public property." In 2022, the Spokane City Council adopted Ordinance C36272, which created subsections (A)(2) and (A)(3) of SMC 12.02.1010, the bans on camping when it would pose a danger, or is under or near a downtown railroad viaduct, or near a congregate shelter. Subsections (A)(2) and (A)(3) do not expressly state they apply to only public property, unlike subsection (A)(1). However, the ordinances recitals ("whereas" clauses) make abundantly clear the city intended subsections (A)(2) and (A)(3) to apply to only individuals camping

10

No. 39924-9-III
*Jewels Helping Hands v. Hansen*

on public property:

> **WHEREAS**, City-owned public lands and properties are generally intended for the safe and sanitary use by the broader public . . .
> **WHEREAS**, many individuals have resorted to using City park property, public sidewalks under or near downtown viaducts . . .
> **WHEREAS**, City Park space is preserved and maintained to help benefit the physical and mental health and enjoyment of the public . . .
> **WHEREAS**, camping interferes with . . . use of these protected public properties; and
> **WHEREAS**, public rights of way (ROW), including sidewalks, are intended for safe and sanitary shared use . . .

CP at 48. Contrary to Jewels's contention, the city clearly intended SMC 12.02.1010(A)(2) and (A)(3) to apply to only city property. And, while the ordinance did not say so specifically in its substantive provisions, it did not need to given the existing limitations imposed by SMC 12.02.005 and SMC 12.02.1000(B). While the city's uncodified legislative intent behind subsections (A)(2) and (A)(3) does not carry over to the proposed initiative, SMC 12.02.005 and SMC 12.02.1000(B) apply just the same.

*Character of the initiative*

Given the initiative impacts the conduct of individuals occupying only public property, it is not a zoning ordinance. Zoning ordinances directly regulate the conduct of landowners, not land occupiers such as guests or trespassers. *See* 8 Eugene McQuillin, The Law of Municipal Corporations §§ 25:18, at 79 (3d ed. 2020) (Persons, property and uses bound: "Generally all persons with an interest in property are bound by the

11

No. 39924-9-III
*Jewels Helping Hands v. Hansen*

zoning of that property to the extent that they cannot authorize, permit or require any use of it contrary to zoning."); 25:59, at 281 (Generally: "[Z]oning ordinances provide landowners with permitted uses, which allow a landowner to use his or her land, in said manner, as of right."); 25:145, at 710 (Use control through zoning laws: "In construing a zoning ordinance, courts afford permitted uses the broadest interpretation so that a landowner may have the benefit of the least restrictive use and enjoyment of his or her land."); 25:146, at 714 (Uses subject to control: "[Z]oning may prevent a person who owns real estate in a residence district from using it for any purpose unusual in such district."). When a zoning ordinance is violated, it is the owner who suffers the penalties, not a guest, invitee, or even a trespasser.

The initiative here does not impose any penalties on any owner or holder of property who runs afoul of its provisions—no city official will suffer punishment if a member of the public violates the initiative's provisions. The only people who could suffer penalties under the terms of the initiative are those whom the law would characterize as guests and trespassers. Because the initiative seeks to regulate those who use the city's property, and not the property owner or holder, it is not a zoning ordinance.[4]

---

[4] For this reason, the initiative also cannot be classified as addressing land use planning.

No. 39924-9-III
*Jewels Helping Hands v. Hansen*

Rather than addressing zoning, the initiative here is a classic vagrancy ordinance, which is an exercise of the city's general police powers. *See* 6A MCQUILLIN, *supra*, § 24:109, at 435 n.26 (3d ed. 2015) (Vagrancy: collecting cases upholding bans on "camping and storage of personal property in public areas").[5] As Mr. Hansen astutely points out, the power to deal with "vagrants" and similar persons in Washington has been expressly granted to the city as a whole, not the local legislative authority. RCW 35.22.280(34)-(35).

Jewels's initial challenge to the subject matter of the initiative therefore fails.

## 2. Does the initiative interfere with state law on homeless response planning?

"While the inhabitants of a municipality may enact legislation governing local affairs, they cannot enact legislation which conflicts with state law." *Seattle Bldg. & Constr. Trades Council*, 94 Wn.2d at 747. Jewels argues the initiative conflicts

---

[5] For a century now, Washington's Supreme Court has relied extensively on McQuillin's treatise to answer questions of municipal governance, including the scope of the local initiative powers. *See, e.g.*, *State ex rel. Harlin v. Superior Court*, 139 Wash. 282, 288-89, 247 P. 4 (1926), *overruled on other grounds by State ex rel. Guthrie v. City of Richland*, 80 Wn.2d 382, 391, 494 P.2d 990 (1972). Our Supreme Court up to current times has liberally cited, quoted, and relied on this treatise.

No. 39924-9-III
*Jewels Helping Hands v. Hansen*

with chapter 43.185C RCW, which is aimed at finding solutions to homelessness.[6]

We disagree.

Contrary to Jewels's arguments, chapter 43.185C RCW does not vest

homelessness regulation with any legislative authority, nor does it mandate or

circumscribe adoption of any homelessness regulation. The chapter is primarily

concerned with gathering data and creating performance metrics for measuring

communities' progress on housing the homeless. RCW 43.185C.030-.060. The chapter

also governs several grant programs. *See, e.g.*, RCW 43.185C.080, .185, .210. The

chapter says nothing about what cities may or may not do about individuals who are

currently unhoused.

The only provision of chapter 43.185C RCW that remotely overlaps with the

initiative is RCW 43.185C.160. This section requires each county's homeless housing

task force to develop a five-year homelessness housing plan. Among the items each plan

must contain are "guidelines" for "[t]emporary encampments." RCW 43.185C.160(2)(c).

But no part of this section requires cities or their legislative authority to implement the

---

[6] Jewels also argues the initiative conflicts with RCW 35A.21.360, which governs the ability of religious organizations to host homeless persons on property owned or controlled by the organization. Even assuming Title 35A RCW applies to Spokane as a charter city, there is no conflict because the initiative does not apply to private property.

14

No. 39924-9-III
*Jewels Helping Hands v. Hansen*

county task force guidelines.

The initiative does not conflict with state law set forth in chapter 43.185C RCW.

Jewels therefore has not shown the initiative falls outside the scope of the second subject

matter limitation.

*3. Is the initiative outside the local initiative power because it is administrative in nature?*

It is well settled that administrative, as opposed to legislative, matters are outside

the scope of the local initiative power. *See, e.g.*, *Neils v. City of Seattle*, 185 Wash. 269,

273, 53 P.2d 848 (1936). The line between an administrative and legislative action is

blurred. Washington courts have adopted two tests for discerning the distinction.

The first test states:

> "Actions relating to subjects of a permanent and general character are usually regarded as legislative, and those providing for subjects of a temporary and special character are regarded as administrative."

*Citizens for Financially Responsible Gov't v. City of Spokane*, 99 Wn.2d 339, 347,

662 P.2d 845 (1983) (quoting 5 MCQUILLIN, *supra*, § 16.55, at 194 (3d rev. ed. 1981).

The second test states:

> "The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it."

15

No. 39924-9-III
*Jewels Helping Hands v. Hansen*

*Id.*

Applying the first test, the initiative readily qualifies as legislative. The initiative is not a temporary measure; it is permanent. And it applies generally throughout the city of Spokane, not just to specific parcels of land. Nevertheless, even when an initiative passes the first test, it cannot be considered legislative unless it also passes the second test. *See Heider v. City of Seattle*, 100 Wn.2d 874, 876, 675 P.2d 597 (1984).

The second test is a much closer call, with its outcome depending on framing. On the one hand, the initiative is new in that it proscribes new geographic locations where camping is never permitted, regardless of shelter space. But on the other hand, the initiative also appears to amend the Spokane City Council's existing camping policy and its decision about how to balance public safety concerns against *Martin*'s requirement that areas be open for camping if homeless shelter space is not available. This framing problem appears to be a feature (or flaw) of the second test. After all, cities rarely legislate on a blank canvas. Almost all legislation is an amendment of some sort of existing legislation.

The appropriate way to frame the character of the initiative is not resolved by case law. Unlike past decisions that have resolved the difficult question of whether an initiative is legislative or administrative in favor of the latter, the initiative here does not

16

No. 39924-9-III
*Jewels Helping Hands v. Hansen*

implicate the details of a "highly regulated" public utility or program. *See Our Water-Our Choice!*, 170 Wn.2d at 12 (initiative implicating water fluoridation was administrative); *see also Spokane Entrepreneurial Ctr.*, 185 Wn.2d at 108 (initiative that would modify "processes for zoning and development decisions" was administrative). Thus, we must turn to other considerations to resolve the parties' dispute.

We look to two guiding principles to resolve the parties' dispute over whether the initiative should be characterized as legislative or administrative. First, is the importance of the right to vote on initiatives and referenda. "[C]ourts should not interfere in the electoral and legislative processes." *Seattle Bldg. & Constr. Trades Council*, 94 Wn.2d at 746. Given the statutory right of Washington voters to directly participate in local initiatives, courts should be hesitant to frame an issue in a way that strips away this right. Doubts as to whether a matter is legislative or administrative should be resolved in favor of allowing the voters to have their say. Second is the burden of proof. Jewels, not Hansen, had the burden of proof in the trial court and continues to have the burden on appeal. *See 1000 Friends of Wash. v. McFarland*, 159 Wn.2d 165, 183, 149 P.3d 616 (2006) (plurality opinion). When both parties' cases are equally strong, the party with

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39924-9-III
*Jewels Helping Hands v. Hansen*

the burden of proof cannot prevail.[7]

Both guiding principles favor finding the initiative is legislative, not administrative. Our deference to the democratic process counsels in favor of characterizing the initiative as legislative, rather than administrative. And given we are otherwise in equipoise, we properly assign to Jewels the failure to establish its claim that the initiative is improperly administrative. Jewels's final challenge to the initiative's subject matter therefore fails.

## CONCLUSION

The order dismissing Jewels's initiative challenge is affirmed.

_____
Pennell, J.

WE CONCUR:

_____      _____
Lawrence-Berrey, A.C.J.                Staab, J.

---

[7] When discussing the burden of proof, we typically refer to the burden of establishing certain facts. But when a litigant challenges the legality of a statute, the litigant has also been assigned a burden of proof. *See State v. Halstien*, 122 Wn.2d 109, 118, 857 P.2d 270 (1993). Given that a party challenging an initiative is contesting the legality of a proposed statute, it is proper to assign that party the burden of proof. *See 1000 Friends*, 159 Wn.2d at 183 ("In general, those who oppose an election on a referendum will have the burden.").

18