[No. 60672-2. En Banc. January 27, 1994.]

SNOHOMISH COUNTY ET AL, *Respondents*, v. ARCHIE ANDERSON, ET AL, *Defendants*, DONALD L. GRAHAM, ET AL, *Appellants*.

*Patterson, Rowley & Schwimmer* and *Robert C. Rowley; Smith Law Firm* and *Douglas J. Smith*, for appellants.

*Seth R. Dawson, Prosecuting Attorney*, and *Thomas Herrick Robertson, Deputy*, for respondent Snohomish County, et al.

*Christine O. Gregoire, Attorney General*, and *Tommy Prud'homme, Assistant*, for respondent State.

UTTER, J. — On October 7, 1993, pursuant to a request for accelerated review, we issued an order affirming the trial court's judgment that Snohomish County Ordinance

93-004 is not subject to referendum. Our October 7, 1993, order noted that the opinion explaining the decision would be filed in due course. We do so today. We affirm the trial court's judgment that ordinance 93-004, passed pursuant to a 1991 amendment to Washington State's Growth Management Act (GMA), is not subject to referendum. We do not address whether the amendment or the GMA is constitutional, or whether the Snohomish County Council (Council) violated the defendants' civil rights by interfering with their right to petition for the reference of an ordinance.

Pursuant to Const. art. 11, § 4,[1] Snohomish County enacted the most recent version of its home rule charter (Charter) in 1987. Included among Snohomish County's rights to self-governance under the Charter was the right of its citizens to reject ordinances passed by the Council.[2]

As part of the 1991 amendment to the GMA, RCW 36.70A.210(2) requires the "legislative authority" of various counties to adopt a county-wide planning policy, in cooperation with the cities located in whole or in part within the county, as follows:

(a) No later than sixty calendar days from July 16, 1991, the legislative authority of the county shall convene a meeting with representatives of each city for the purpose of establishing a collaborative process that will provide a framework for the adoption of a county-wide planning policy;

(b) The process and framework for adoption of a county-wide planning policy specified in (a) of this subsection shall determine the manner in which the county and the cities agree to all procedures and provisions including but not limited to desired planning policies, deadlines, ratification of final agreements and demonstration thereof, and financing, if any, of all activities associated therewith;

. . . .

(e) No later than July 1, 1992, the legislative authority of the county shall adopt a county-wide planning policy according to the process provided under this section and that is

---

[1]"Any county may frame a 'Home Rule' charter for its own government subject to the Constitution and laws of this state . . .."

[2]Snohomish County Charter § 5.10 (1987) states in relevant portion: "The people of Snohomish county reserve to themselves the power to make certain proposals at their option, and to enact or reject them at the polls, independent of the county council."

consistent with the agreement pursuant to (b) of this subsection, and after holding a public hearing or hearings on the proposed county-wide planning policy.

On February 4, 1993, pursuant to this mandate, the Snohomish County Council enacted ordinance 93-004, incorporating by reference Snohomish County's "Countywide Planning Policies". Defendants' Clerk's Papers vol. 7, at 610-46. The ordinance does not establish, dissolve, or modify any legal rights. It merely establishes very general goals governing such issues as development of urban and rural areas, housing, and transportation[3] and the procedure for refining and amending the policies delineated by the ordinance. The "Countywide Planning Policies for Snohomish County" expressly states that a "countywide planning policy" is to be used "solely for establishing a countywide framework from which county and city comprehensive plans are developed and adopted pursuant to this Chapter". Defendants' Clerk's Papers vol. 7, at 614.

Within 10 days of the Council's adoption of ordinance 93-004, and based on their Charter rights, several Snohomish County citizens filed a petition for a referendum against ordinance 93-004 (petition 93-1).[4] On February 23, 1993,

---

[3]For example, the "Policies to Implement Urban Growth Areas" includes the goal to "[e]stablish Urban Growth Areas which: . . .when aggregated, at a minimum shall accommodate the county's 20 year urban allocated population projection"; the "Policies for Rural Land Use" includes the goal to "[e]stablish level of service standards for rural development"; the "Policies for Housing" includes the goal to "[e]nsure that fair and equal access to housing is available to all persons regardless of race, color, religion, gender, sexual orientation, age, national origin, familial status, source of income, or disability"; and the "Policies for Transportation" includes the goal to "[e]stablish agreements and procedures for jointly mitigating traffic impacts, including provisions for development and design review and sharing of developer impact mitigation.

[4]They wished to place the following question on the ballot: "DO YOU APPROVE THE SNOHOMISH COUNTY PLANNING POLICIES INSTITUTING CENTRALISED [sic] CONTROL OF ALL URBAN GROWTH, RURAL LAND USE AND ECONOMIC DEVELOPMENT, INCLUDING COMPREHENSIVE CONTROL OVER RURAL SERVICES, URBAN DENSITY, AND COUNTY TRANSPORTATION SERVICES WITH DELEGATION OF VITAL PLANNING FUNCTIONS TO PRIVATE CORPORATIONS SO AS TO ALLOW NO INDIVIDUAL APPEAL?" Defendants' Clerk's Papers vol. 7, at 647-50.

Snohomish County instituted an action for declaratory judgment against the citizens, seeking a judgment establishing that ordinance 93-004 was not subject to referendum and enjoining petition 93-1. Defendants' Clerk's Papers vol. 7 at 600-09. The County argued that because ordinance 93-004 was mandated by RCW 36.70A.210(2), the ordinance superseded the Charter-created referendum rights.

The trial court granted most of the Council's motion for summary judgment, holding, *inter alia*, ordinance 93-004 was not subject to referendum and voiding petition 93-1. Defendants' Clerk's Papers vol. 1, at 21-28. The citizen defendants appealed to this court for direct review of the trial court's summary judgment, arguing the case involves fundamental and urgent issues of broad public import which require prompt and ultimate determination. This court agreed to consider on accelerated review the narrow issue of whether a county ordinance passed pursuant to RCW 36.70A.210(2) is subject to referendum. All other claims, including challenges to the constitutionality of the GMA and challenges to the actions of the Snohomish County Council and its members, will be examined in the ordinary course of appellate review.

The citizens assign error to the trial court's interpretation of RCW 36.70A to conflict with the Snohomish County Charter's grant of referendum rights. The citizens argue that because RCW 36.70A.210(2) and their rights of referendum are not inconsistent, Snohomish County citizens should be entitled to exercise their referendum rights.

As a threshold matter, we must decide whether RCW 36.70A.210(2) conflicts with Snohomish County Charter § 5.10. At the heart of whether the two conflict is the following language from RCW 36.70A.210(2): "The *legislative authority* of a county . . . shall adopt a county-wide planning policy . . .". (Italics ours.) The citizens urge us to hold that the "legislative authority" of Snohomish County includes the people of the county exercising referendum powers. If we were to so hold, the GMA would not interfere with the citizens' referendum rights, and ordinance 93-004 would be

subject to the citizens' constitutionally derived rights of referendum. In opposition, the Snohomish County Council argues that RCW 36.70A.210 immunizes "county planning policies" from referendum, thus squarely presenting a conflict between State Legislature GMA mandates and the home rule referendum rights.

The text of RCW 36.70A.210 demonstrates that the statute does conflict with the rights of referendum. RCW 36.70A.210 delegates the authority for creating a county-wide planning policy to the "legislative authority" of a county. Referendum rights do not exist when power has been statutorily delegated to the "legislative authority". *See Neils v. Seattle*, 185 Wash. 269, 53 P.2d 848 (1936). This is particularly sensible under RCW 36.70A.210(2), since duties assigned to the "legislative authority" cannot be carried out by initiative or referendum. For example, the statute directs the "legislative authority" to convene meetings and establish processes. These responsibilities cannot be performed by the exercise of a "yes/no" vote.

Furthermore, the Legislature is presumed to be familiar with judicial decisions of the Supreme Court construing existing statutes and the state constitution. *Fain v. Chapman*, 94 Wn.2d 684, 619 P.2d 353 (1980), *overruled on other grounds in Washington State Motorcycle Dealers Ass'n v. State*, 111 Wn.2d 667, 763 P.2d 442 (1988). At the time the Legislature enacted RCW 36.70A, case law defined "legislative authority" and comparable terms in statutory contexts to mean the council and or mayor only, and not to permit referendum rights.[5] There is thus no reason to believe, as the Snohomish County citizens assert, that "the legislature would have been specific had it intended to eliminate or bypass referendum rights . . .". Joint Brief of Appellants, at 24.

---

[5]*See, e.g., State ex rel. Bowen v. Kruegel*, 67 Wn.2d 673, 409 P.2d 458 (1965); *State ex rel. Haas v. Pomeroy*, 50 Wn.2d 23, 25, 308 P.2d 684 (1957); *Neils v. Seattle*, 185 Wash. 269, 53 P.2d 848 (1936). *See also Paget v. Logan*, 78 Wn.2d 349, 474 P.2d 247 (1970) (court distinguished situation where authority is delegated to electorate from situation where authority is delegated to "legislative authority"; in latter situation, referendum rights are not permitted).

In fact, the Legislature was quite specific in its delineation of the process by which the mandated plans were to be passed; referendum rights are not contemplated in RCW 36.70A.210(2). RCW 36.70A stipulates the process for adopting a planning policy in detail, describing the proper form of "public participation".[6] "Where a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted by the legislature. . .". *Washington Natural Gas Co. v. PUD 1*, 77 Wn.2d 94, 98, 459 P.2d 633 (1969) (citing *State v. Roadhs*, 71 Wn.2d 705, 707, 430 P.2d 586 (1967)). The absence of any mention of referenda indicates the statute's rejection of referendum rights.

Finally, the two authorities cited by Snohomish County citizens as support for their contention that "legislative authority" as used in RCW 36.70A.210(2) includes referendum rights are inapposite. The court stated in *State ex. rel. Linn v. Superior Court*, 20 Wn.2d 138, 142-43, 146 P.2d 543 (1944):

> [T]he question presents itself as to whether or not the words "legislative authority," *as used in [Const. art. 11, § 10]*, should be held to include the people acting in accordance with their right to initiate legislation . . .".

(Italics ours.) In holding that the words did include "the people", the *Linn* court examined the purpose for which Const. art. 11, § 10 was adopted, finding that the framers intended for the meaning of "legislative authority" as used in Const. art. 11, § 10 to be broad. However, the analysis of the meaning of "legislative authority" as used by the framers of the constitution in 1889 bears limited connection

---

[6]RCW 36.70A.140 reads in pertinent portion:

"Each county and city that is required . . . to plan . . . RCW 36.70A.040 shall establish procedures providing for early and continuous public participation in the development and amendment of comprehensive land use plans and development regulations implementing such plans. The procedures shall provide for broad dissemination of proposals and alternatives, opportunity for written comments, public meetings after effective notice, provision for open discussion, communication programs, information services, and consideration of and response to public comments."

to the meaning of "legislative authority" as used by the Washington State Legislature in the context of the 1991 amendments. The *Linn* case is therefore of limited precedential value, except insofar as it directs the court to examine the intent of the provision at issue.

The second case cited by the Snohomish County citizens is likewise inapposite. The court in *Citizens for Financially Responsible Gov't v. Spokane*, 99 Wn.2d 339, 347, 662 P.2d 845 (1983) did not address the Legislature's use of "legislative authority", but rather its use of the term "city". Moreover, the court expressly noted the important difference between statutory and constitutional interpretation and the principle that "legislative authority" in a statutory context meant the mayor and council exclusively:

> In the context of *statutory* interpretation, we have previously held that a city's "corporate authority", also referred to as a "legislative authority", means exclusively the mayor and city council. . . .
>
> In a *constitutional* context, the phrase . . . has not been restrictively interpreted . . ..

*Citizens*, 99 Wn.2d at 344. A clear conflict thus exists between the state statute and the county charter.

The citizens argue that even if a conflict exists, all attempts by the Legislature to delegate power in a manner different from the manner dictated by the charter of a home rule county are ineffective. It is true that local governance is generally the province of home rule counties. *See Henry v. Thorne*, 92 Wn.2d 878, 602 P.2d 354 (1979); *see also* 20 C.J.S. *Counties* § 40 (1990); *State ex rel. Carroll v. King Cy.*, 78 Wn.2d 452, 474 P.2d 877 (1970). However, this principle does not entirely negate the State's ability to successfully challenge home rule county charter rights.

■ The Washington State Constitution expressly relegates home rule charters to an inferior position vis-a-vis "the Constitution and laws of this state". Const. art. 11, § 4, para. 2. The *Henry* court itself recognized bounds on charter rights, noting that county home rule was intended to further self-governance in "purely local affairs . . . so long as

[those exercising their rights to self-governance] abided by the provisions of the constitution and did not run counter to considerations of public policy of broad concern, expressed in general laws." *Henry*, 92 Wn.2d at 881 (quoting *State ex rel. Carroll v. King Cy.*, 78 Wn.2d 452, 474 P.2d 877 (1970)).

The *Henry* court held that the Legislature could not triumph over charter decisions concerning the timing of elections. The court's holding was premised on its judgment that the timing of elections fell within the bounds described above. In contrast, the facts of this case do not fall within the *Henry* paradigm. Permitting the referendum would jeopardize an entire state plan and thus would extend beyond a matter of local concern. The preamble to RCW 36.70A states:

> The legislature finds that uncoordinated and unplanned growth, together with a lack of common goals expressing the public's interest in the conservation and the wise use of our lands, pose a threat to the environment, sustainable economic development, and the health, safety, and high quality of life enjoyed by residents of this state. It is in the public interest that citizens, communities, local governments, and the private sector cooperate and coordinate with one another in comprehensive land use planning. . . .

RCW 36.70A.010. Although the citizens argue that the referendum is a matter of local governance, the referendum involves the potential repeal of an ordinance required by the State Legislature to be enacted for reasons of statewide growth management.

We therefore affirm the trial court's judgment, voiding petition 93-1 and holding that ordinance 93-004 is not subject to referendum.

ANDERSEN, C.J., and BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.

Reconsideration denied March 9, 1994.