[No. 60655-2.   En Banc.   December 8, 1994.]

WHATCOM COUNTY, *Appellant*, v. STEVE BRISBANE, *Respondent.*

*David S. McEachran, Prosecuting Attorney,* and *Randall J. Watts, Chief Civil Deputy,* for appellant.

*John M. Groen ( Ronald A. Zumbrun* and *Robin L. Rivett,* of counsel) of *Pacific Legal Foundation,* for respondent.

*Catherine W. Smith* on behalf of The Washington Environmental Council, North Cascades Audubon Society, Greater Ecosystem Alliance, Point Roberts Heron Preservation Committee, Watershed Defense Fund, and Friends of Chuckanut, amici curiae for appellant.

SMITH, J. — This court granted the motion of Respondent Steve Brisbane[1] to transfer from the Court of Appeals, Division One, to the Supreme Court review of a decision by the Whatcom County Superior Court dismissing on summary judgment a challenge by Whatcom County to a referendum petition to amend portions of a critical areas ordinance adopted by the Whatcom County Council pursuant to the Growth Management Act. We reverse.

## STATEMENT OF FACTS

On June 23, 1992, the Whatcom County Council adopted the Temporary Critical Areas Ordinance, ordinance 92-032.[2]

[1] In an affidavit Respondent signed his name "Stephen W. Brisbane". Clerk's Papers, at 155.

[2] Clerk's Papers, at 22-25.

Respondent Brisbane (Respondent) conducted a successful referendum campaign to eliminate portions of the ordinance.[3] The referendum was certified by the County Auditor in January 1993 for placement on the November 1993 ballot.[4]

On January 12, 1993, Whatcom County (County) filed a declaratory judgment action in the Whatcom County Superior Court asking the court to declare that the critical areas ordinance was not subject to local referendum.[5] On May 14, 1993, the Whatcom County Superior Court, the Honorable Michael F. Moynihan, granted summary judgment in favor of Respondent Brisbane and dismissed the complaint.[6] The trial court held the critical areas ordinance is subject to local referendum.[7] Whatcom County appealed to the Court of Appeals, Division One. On July 16, 1993, Respondent Brisbane moved to transfer the appeal to this court. The County did not oppose the motion. We granted it on April 6, 1994.

## QUESTION PRESENTED

The sole question presented is whether a critical areas ordinance adopted by the Whatcom County Council pursuant to the Growth Management Act is subject to amendment by referendum under the home rule charter of the County.

## DISCUSSION

### Growth Management Act

The Growth Management Act, RCW 36.70A, was enacted in 1990 to prevent "uncoordinated and unplanned growth" and to encourage "comprehensive land use planning" among the "citizens, communities, local governments, and the private sector . . .."[8] Two years later, in 1992, WAC 365-195 was

---

[3]Clerk's Papers, at 16.

[4]Clerk's Papers, at 16. Whatcom County voters approved the referendum at the November 3, 1993 election.

[5]Clerk's Papers, at 15-18.

[6]Clerk's Papers, at 7-8.

[7]Clerk's Papers, at 8.

[8]RCW 36.70A.010.

promulgated which, when read in conjunction with the Growth Management Act, similarly operates to "accomplish[ ] the planning and development regulation requirements of the act."[9]

Under former RCW 36.70A.040(1) any county with "a population of fifty thousand or more and has had its population increase by more than ten percent in the previous ten years . . . shall adopt comprehensive land use plans and development regulations".[10] The statute further provides that "[a]ny county . . . required to adopt a comprehensive land use plan under subsection (1) . . . shall adopt the plan on or before September 1, 1993."[11]

Whatcom County adopted the Temporary Critical Areas Ordinance[12] on June 23, 1992 to "carry out the goals of the Whatcom County Comprehensive Land Use Plan"[13] mandated by RCW 36.70A.040(1) and (3), .050, .060, .170, and .210.

▮ Pursuant to Const. art. 11, § 4 (amend. 21),[14] Whatcom County enacted the most recent version of its home rule

---

[9]WAC 365-190-020.

[10]RCW 36.70A.040(1) was amended in 1993 and provides in relevant part:

"Each county that has both a population of fifty thousand or more . . . *shall conform with all of the requirements of this chapter.*" (Italics ours.)

[11]RCW 36.70A.040(3) was amended in 1993 and provides in relevant part:

"Any county . . . required to *conform with all of the requirements of this chapter* under subsection (1) of this section *shall take actions under this chapter as follows: (a) The county legislative authority shall adopt a county-wide planning policy under RCW 36.70A.210; (b) the county . . . shall designate critical areas, . . . and adopt development regulations . . . protecting these designated critical areas, under RCW 36.70A.170 and 36.70A.060; (c) the county shall designate and take other actions related to urban growth areas under RCW 36.70A.110; (d) if the county has a population of fifty thousand or more, the county . . . shall adopt a comprehensive plan under this chapter and development regulations that are consistent with and implement the comprehensive plan on or before July 1, 1994 . . ..*" (Italics ours.)

[12]The text of the ordinance consists of approximately 128 pages. The amendments under the referendum struck words almost indiscriminately throughout the ordinance. See Clerk's Papers, at 27-145.

[13]Clerk's Papers, at 27.

[14]"Any county may frame a 'Home Rule' charter for its own government subject to the Constitution and laws of this state . . .."

charter (Charter) in 1993. Included among the rights of self-governance under the Charter was the right of citizens to reject ordinances passed by the County Council.[15] "[L]ocal governance is generally the province of home rule counties. . . . However, this principle does not entirely negate the State's ability to successfully challenge home rule county charter rights."[16] This court observed in *Snohomish Cy. v. Anderson, supra*:

> The Washington State Constitution expressly relegates home rule charters to an inferior position vis-a-vis "the Constitution and laws of this state". Const. art. 11, § 4, para. 2. The *Henry* court . . . recognized bounds on charter rights, noting that county home rule was intended to further self-governance in "purely local affairs . . . so long as [those exercising their rights to self-governance] abided by the provisions of the constitution and did not run counter to considerations of public policy of broad concern, expressed in general laws."[17]

Under the Growth Management Act, RCW 36.70A, the Legislature used the words "county" or "city" interchangeably with the words "legislative body" of the county or city.[18] Thus, the power to act under the Growth Management Act was delegated to the "county legislative body". This raises a

---

[15]The Whatcom County Code art. 5, § 5.10 (1993) provides in relevant part:

"The people of Whatcom County reserve to themselves the power to make certain proposals, at their option, and to enact or reject them all at the polls, independent of the County Council."

The Whatcom County Code art. 5, § 5.50 (1993) specifically provides for referendum:

"The second power reserved by the people is the referendum. It may be ordered on any act, or bill, or ordinance, or any part thereof passed by the County Council except such ordinances as may be necessary for the immediate preservation of the public peace, health or safety or support of the county government and its existing public institutions. Upon registration and validation of a referendum petition, the measure will be ineffective pending the outcome of the referendum procedure. . . ."

This language closely parallels the language of Const. art. 2, § 1(b) (amend. 72) providing for referendum applicable to state laws.

[16]*Snohomish Cy. v. Anderson*, 123 Wn.2d 151, 158, 868 P.2d 116 (1994).

[17]*Anderson*, at 158 (quoting *Henry v. Thorne*, 92 Wn.2d 878, 881, 602 P.2d 354 (1979)).

[18]For example, former RCW 36.70A.040(3) provides:

"*Any county or city* that is required to adopt a comprehensive land use plan under subsection (1) of this section shall adopt the plan on or before July 1,

conflict between the language of the Growth Management Act and the language of the Whatcom County Home Rule Charter (1993).

■ "Referendum rights do not exist when power has been statutorily delegated to the 'legislative authority'."[19] "In the context of *statutory* interpretation, [this court has] previously held that a city's 'corporate authority', also referred to as a 'legislative authority', means exclusively the mayor and city council. Therefore, a statutory grant of power to a legislative authority does not generally permit delegation to the voters through an initiative or referendum."[20]

Our most recent case involving legislative authority and the right of referendum is *Snohomish Cy. v. Anderson.*[21] In that case, we considered whether a section of the Growth Management Act, RCW 36.70A.210(2), was subject to referendum and whether the mandatory language of the Growth Management Act conflicted with referendum rights under the Snohomish County Home Rule Charter.[22] The Snohomish County Charter has a provision identical to that of the Whatcom County Charter granting referendum rights to the people. In that case, the people of Snohomish County argued that the words "legislative authority" included their right to exercise referendum powers.[23] This court rejected that argument, stating:

> "[L]egislative authority" cannot be carried out by initiative or referendum. For example, the statute directs the "legislative authority" to convene meetings and establish processes. These

1993. Any *county or city* that is required to adopt a comprehensive land use plan under subsection (2) of this section shall adopt the plan not later than three years from the date the *county legislative body* takes action as required by subsection (2) of this section." (Italics ours.)

[19]*Anderson*, at 156.

[20](Citations omitted.) *Citizens for Financially Responsible Gov't v. Spokane*, 99 Wn.2d 339, 344-45, 662 P.2d 845 (1983).

[21]123 Wn.2d 151, 868 P.2d 116 (1994).

[22]*Anderson*, at 155.

[23]*Anderson*, at 155.

responsibilities cannot be performed by the exercise of a "yes/ no" vote.

Furthermore, the Legislature is presumed to be familiar with judicial decisions of the Supreme Court construing existing statutes and the state constitution. At the time the Legislature enacted RCW 36.70A, case law defined "legislative authority" and comparable terms in statutory contexts to mean the council and/or mayor only, *and not to permit referendum rights.*[24]

(Citation omitted. Italics ours.)

■ The purpose of the Growth Management Act, RCW 36.70A, would be frustrated if the people of Whatcom County were permitted by referendum to amend an ordinance adopted to implement the goals of a comprehensive land use plan. Under *Anderson*, "[p]ermitting the referendum would jeopardize [the] entire state plan [as intended by the Growth Management Act] and thus would extend beyond a matter of local concern."[25] One consequence of such a broad interpretation of the referendum power includes the potential repeal of ordinances required by the Legislature to be enacted for statewide growth management. Also, it would be difficult to balance the various interests contemplated by the Legislature.[26]

■ Referendum rights are generally matters of local governance and are not mentioned in the Growth Management Act.[27] "Where a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted by the legislature. . .. *The absence of any mention of referenda indicates the statute's*

---

[24]*Anderson*, at 156 (citing, *e.g.*, *State ex rel. Bowen v. Kruegel*, 67 Wn.2d 673, 409 P.2d 458 (1965); *State ex rel. Haas v. Pomeroy*, 50 Wn.2d 23, 308 P.2d 684 (1957); *Neils v. Seattle*, 185 Wash. 269, 53 P.2d 848 (1936)). *See also Paget v. Logan*, 78 Wn.2d 349, 474 P.2d 247 (1970) (court distinguished situation where authority is delegated to electorate from that where authority is delegated to "legislative authority". Referendum rights are not permitted in the latter.).

[25]*Anderson*, at 159.

[26]In RCW 36.70A.010, the Legislature considered and balanced the interests of the "citizens, communities, local governments, and the private sector" in developing the Growth Management Act.

[27]*Anderson*, at 158-59.

*rejection of referendum rights.*"[28] But the Growth Management Act does provide a process for public participation in growth management legislation at the county or city level. The people of Whatcom County had a participatory opportunity to voice their concerns prior to adoption of the Temporary Critical Areas Ordinance, ordinance 92-032. RCW 36.70A.140 provides:

> *Each county* and city that is *required* or chooses to plan under RCW 36.70A.040 *shall establish procedures providing for early and continuous public participation* in the development and amendment of comprehensive land use plans and *development regulations implementing such plans.* The procedures shall provide for *broad dissemination of proposals and alternatives, opportunity for written comments, public meetings after effective notice, provision for open discussion, communication programs, information services, and consideration of and response to public comments.* Errors in exact compliance with the established procedures shall not render the comprehensive land use plan or development regulations invalid if the spirit of the procedures is observed.

(Italics ours.)

Ordinance 92-032 was adopted to satisfy the Whatcom County comprehensive land use plan mandated by the Growth Management Act. The County is correct in its assertion that adoption of the ordinance did not create new policy, but merely pursued a plan already adopted by its legislative body, the County Council. The ordinance is merely execution of a policy already in existence. It specifically provided that it was created to comply with the mandate of the Growth Management Act.[29]

Whatcom County Code art. 2, § 2.20 provides in relevant part:

> The County Council shall exercise its *legislative* power by *adoption and enactment of ordinances* or resolutions. It shall have the power:
>
> . . . .

---

[28](Italics ours.) *Anderson,* at 157. One commentator has noted that some "statutes scattered throughout the code authorize the initiative and referendum for particular subjects". Philip A. Trautman, *Initiative and Referendum in Washington: A Survey,* 49 Wash. L. Rev. 55, 77 (1973).

[29]Clerk's Papers, at 22.

(d) To adopt by ordinance comprehensive plans, including improvement plans for the present and future development of the county.

(Italics ours.)

Under the Whatcom County Code, enactment of ordinances is clearly a legislative act. However, the critical areas ordinance in this case is still not subject to referendum. Art. 2, § 2.30 of the Whatcom County Code provides that "[e]very legislative act shall be by ordinance" and that "[n]o ordinance shall be amended unless the new ordinance sets forth each amended section or subsection at full length". Although legislative acts must be by ordinance, which would normally be subject to referendum, the Temporary Critical Areas Ordinance additionally falls within the public health and safety exception to referendum under article 5, section 5.50 of the Whatcom County Code:

> The second power reserved by the people is the referendum. It may be ordered on any act, or bill, or ordinance, or any part thereof passed by the County Council *except such ordinances as may be necessary for the immediate preservation of the public peace, health or safety or support of the county government and its existing public institutions.*

(Italics ours.)

The Whatcom County Council somewhat routinely declared that "enactment of the Temporary Critical Areas Ordinance w[ould] *promote the public health, safety and general welfare.*"[30] But this nevertheless met the requirements for the exception. In addition, the Critical Areas Ordinance was enacted to satisfy the goals required by the Growth Management Act. The immediacy was established by the September 1, 1993 statutory deadline, which preceded the November 3, 1993 referendum election.

█ Even if the people of Whatcom County did have the power to amend the Critical Areas Ordinance, the amended ordinance would have to be consistent with state law as expressed by the Legislature. This court has determined that the power of referendum is "applicable only where . . .

---

[30](Italics ours.) Clerk's Papers, at 24.

[the] procedures do not conflict with the expressed legislative intent."[31] If there are inconsistencies, "the intent of the legislature must govern, and . . . conflicting charter provisions must yield to that intent."[32]

## Planning Enabling Act

The Planning Enabling Act, RCW 36.70, was enacted "to provide the authority for, and the procedures to be followed in, guiding and regulating the physical development of a county . . . through correlating both public and private projects and coordinating their execution with respect to . . . assuring the highest standards of environment for living, . . . and conserving the highest degree of public health, safety, morals and welfare."[33] The Act provides for creation of departments, commissions and planning agencies, and further describes the procedural functions of each.[34]

The Planning Enabling Act and the Growth Management Act are two related statutes which should be " '. . . read together to determine legislative purpose to achieve a "harmonious total statutory scheme . . . which maintains the integrity of the respective statutes." ' "[35] Both statutes can be read consistently and harmoniously to carry out their intended legislative purpose.

The Whatcom County Temporary Critical Areas Ordinance, ordinance 92-032, having been enacted pursuant to legislative mandate under the Growth Management Act, RCW 36.70A, is not subject to referendum.

---

[31]*State ex rel. Guthrie v. Richland,* 80 Wn.2d 382, 387, 494 P.2d 990 (1972).

[32]*Guthrie,* at 385. *See also Seattle Bldg. & Constr. Trades Coun. v. Seattle,* 94 Wn.2d 740, 747, 620 P.2d 82 (1980); *State ex rel. Bowen v. Kruegel,* 67 Wn.2d 673, 679, 409 P.2d 458 (1965).

[33]RCW 36.70.010.

[34]RCW 36.70.030; 36.70.040; 36.70.320.

[35]*Ellensburg v. State,* 118 Wn.2d 709, 713, 826 P.2d 1081 (1992) (quoting *Employco Personnel Servs., Inc. v. Seattle,* 117 Wn.2d 606, 614, 817 P.2d 1373 (1991)).

## Summary and Conclusions

There is a conflict between the language of the Growth Management Act and provisions of the Whatcom County Home Rule Charter giving the right of referendum to the people of Whatcom County. This court has stated that when there is a conflict between the language of a state statute and the language of a home rule charter, the language of the state statute prevails.

The Whatcom County Home Rule Charter may grant the people the right of referendum over ordinances enacted by the County. However, allowing exercise of that right over ordinances enacted pursuant to the Growth Management Act would run counter to and frustrate the declared purposes of the Act to prevent uncoordinated and unplanned growth and to encourage conservation and wise use of land.

We reverse the Whatcom County Superior Court which granted summary judgment in favor of Respondent Steve Brisbane upholding a referendum amending portions of Whatcom County Ordinance 92-032, the Temporary Critical Areas Ordinance, enacted by the Whatcom County Council pursuant to the Growth Management Act, RCW 36.70A.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, GUY, and JOHNSON, JJ., concur.

MADSEN, J. (dissenting) — I respectfully dissent and would affirm the Superior Court's order dismissing Whatcom County's challenge to the referendum petition filed in this case.

The majority makes three main points to support its decision to reverse the Superior Court, all of which are legally unsupportable. The majority claims that the wording of the statutory grant of power regarding temporary critical areas ordinances is of no significance; that "continuous public participation" in growth management decisions does not include referenda; and that the ordinance at issue was emergency legislation immune from revision by referendum.

I turn first to the majority's contention that under the Growth Management Act, the Legislature used the words "county" or "city" interchangeably with the words "legislative body" and that, therefore, "the power to act under the Growth Management Act was delegated to the 'county legislative body' ". Majority, at 349. At issue in this case is not the wording of the entire Growth Management Act, but that of two statutes therein, RCW 36.70A.060 and RCW 36.70A.170. As the County explains, these statutes mandate the passage of temporary critical areas ordinances. RCW 36.70A.060(2) states that "[e]ach county and city shall adopt development regulations that protect critical areas that are required to be designated under RCW 36.70A.170". RCW 36.70A.170(1) provides that "each county, and each city" shall designate critical areas where appropriate. There is no reference to the "county legislative body" in either statute.

The absence of such a reference is key given the Washington case law cited by the majority. As the majority notes, "[A] statutory grant of power to a legislative authority does not generally permit delegation to the voters through an initiative or referendum.' " Majority, at 350 (quoting *Citizens for Financially Responsible Gov't v. Spokane*, 99 Wn.2d 339, 344-45, 662 P.2d 845 (1983)). The corollary to this rule is that if the grant of power is to the city or county as a corporate entity, direct legislation in the form of a referendum is permissible. *Leonard v. Bothell*, 87 Wn.2d 847, 852-53, 557 P.2d 1306 (1976); *Paget v. Logan*, 78 Wn.2d 349, 355, 474 P.2d 247 (1970). Consequently, this court recently found the wording of the statutory grant of power "at the heart" of whether referendum rights were available to challenge a countywide planning policy enacted pursuant to RCW 36.70A.210(2). *Snohomish Cy. v. Anderson*, 123 Wn.2d 151, 155, 868 P.2d 116 (1994). In construing this section of the Growth Management Act, the *Anderson* court found that the statute's reference to the "legislative authority" of a county eliminated referendum rights with regard to countywide planning policies. "Referendum rights do not exist when power has been

statutorily delegated to the 'legislative authority'." *Anderson*, at 156 (quoting *Neils v. Seattle*, 185 Wash. 269, 53 P.2d 848 (1936)).

The *Anderson* court observed further that the Legislature is presumed to be familiar with judicial decisions of the Supreme Court construing statutory language. *Anderson*, at 156. "At the time the Legislature enacted RCW 36.70A, case law defined 'legislative authority' and comparable terms in statutory contexts to mean the council and/or mayor only, and not to permit referendum rights." *Anderson*, at 156; *see also Leonard*, at 854 ("This court should also presume the legislature was aware of the decisions of this court which preclude a referendum election when the legislature delegated the authority to the legislative body and not to the city as a corporate entity.").

Given this precedent, the majority's conclusion that references to "county" and to the "county legislative authority" in the Growth Management Act are interchangeable is, to say the least, surprising. Having assumed that the Legislature knows the consequences of granting authority to a "legislative authority" in a statute, this court also should assume that the Legislature knows the differing consequences of granting authority to a "county". Since the grant of authority to enact critical areas ordinances is to the county under RCW 36.70A.060(2) and RCW 36.70A.170(1)(d), the conclusion must be that the Legislature intended no interference with the referendum rights conferred upon Whatcom County voters by that county's home rule charter.

Part of the majority's confusion may stem from its belief that the elimination of referendum rights in *Anderson* requires the elimination of referendum rights in this case. Neither the language nor the purpose of the relevant statutes mandates such a result.

As stated above, the statute at issue in *Anderson* was RCW 36.70A.210, which requires counties to enact planning policies that set forth general goals governing, among other things, the development of urban areas; the siting of public facilities of a countywide or statewide nature; transportation

facilities and strategies; and affordable housing. RCW 36.70A.210(3); *see Anderson,* at 154. RCW 36.70A.210(7) also authorizes multicounty planning policies adopted by two or more counties. The *Anderson* court recognized that county home rule is intended to further self-governance in purely local affairs so long as those exercising their rights to self-governance do not "run counter to considerations of public policy of broad concern, expressed in general laws.' " *Anderson,* at 159 (quoting *Henry v. Thorne,* 92 Wn.2d 878, 881, 602 P.2d 354 (1979)). The *Anderson* court understandably concluded that allowing the referendum under challenge would run counter to such considerations, given the broad range of policies required to be included in plans enacted pursuant to RCW 36.70A.210 and the possibility of multicounty plans. "Permitting the referendum would jeopardize an entire state plan and thus would extend beyond a matter of local concern." *Anderson,* at 159.

By contrast, RCW 36.70A.060(2) is much more limited in scope, and the temporary critical areas ordinances enacted pursuant thereto *are* purely local in concern. The ordinance at issue is concerned solely with Whatcom County and addresses the development of specific environmental areas and the permit processes relevant thereto. It does not appear that the referendum provisions proposed to the Whatcom County ordinance "would jeopardize an entire state plan". Thus, neither the language nor the intent of the statutes authorizing critical areas ordinances is thwarted by recognizing the applicability of referendum rights.

The majority next points out that Whatcom County voters should have contented themselves with the early participation in the ordinance process authorized by RCW 36.70A.140. This statute provides that each affected county shall establish procedures providing for early and continuous public participation in the development of comprehensive land use plans and of development regulations implementing such plans. These procedures are to provide for, in part, "broad dissemination of proposals and alternatives". RCW 36.70A-

.140. The majority apparently interprets RCW 36.70A.140 as authorizing "continuous public participation" before, but not after, the enactment of an ordinance, and does not see a referendum as a legitimate means of disseminating alternatives. In a similar vein, the County states that cooperation in comprehensive land use planning is required under the Growth Management Act and "[t]he referendum is not a cooperative or coordinated effort in planning". Br. of Appellant, at 22. Apparently, enactment of a critical areas ordinance with which a significant portion of its population disagrees is an example of a cooperative effort in planning, whereas a referendum seeking to demonstrate that disagreement is not.

More importantly, the County, as well as the majority, misconstrues the nature of referendum rights in discussing public participation. A referendum is not simply an effort to participate in, or contribute to, discussion; rather, the enactment of a referendum measure "is an exercise of the same power of sovereignty as that exercised by the legislature in the passage of a statute". Philip A. Trautman, *Initiative and Referendum in Washington: A Survey*, 49 Wash. L. Rev. 55, 66 (1973). Initiative and referendum provisions reserve to voters "the fundamental right of a governed people to exercise their inherent and constitutional political power over governmental affairs". *Paget*, at 352. Therefore, to say that public discussion of the proposed content of an ordinance is somehow equivalent to the right to challenge that ordinance by referendum, and that the public must be contented with such discussion, is a mischaracterization of the significance of the referendum power.

I next disagree with the majority's statement that the critical areas ordinance at issue "is merely execution of a policy already in existence". Majority, at 352. Initially I am concerned because this statement is hard to reconcile with the majority's earlier statement that permitting the referendum would jeopardize the entire state plan. See majority, at 351 (citing *Anderson*, at 159). The greater issue, however, is the confusion created by the majority's failure both to support its conclusion and to adhere to it.

As stated earlier, the critical areas ordinance at issue here is of lesser magnitude than the countywide planning policy at issue in *Anderson.* However, I do not see the ordinance as merely execution of a policy already in existence. If viewed in this light, the ordinance presumably would be an administrative rather than legislative action and so not subject to referendum. The rule in Washington is that the referendum power extends only to matters legislative in character and not to merely administrative acts. *Heider v. Seattle,* 100 Wn.2d 874, 875, 675 P.2d 597 (1984); *Citizens,* at 347. Two tests used to distinguish between administrative and legislative matters are as follows:

> Actions relating to subjects of a permanent and general character are usually regarded as legislative, and those providing for subjects of a temporary and special character are regarded as administrative. . . . Another test has been whether the proposition is one to make new law or to execute law already in existence.

(Citation omitted.) *Heider,* at 876 (quoting *Citizens,* at 347).

The majority implicitly acknowledges but then ignores this law when it follows its statement that "[t]he ordinance is merely execution of a policy already in existence" (and thus presumably administrative) by stating that enactment of ordinances is a legislative act under the Whatcom County Code. Majority, at 353. Even if the Code did not so state, it would appear that the critical areas ordinance at issue constitutes a legislative act. The ordinance is 145 pages long and clearly establishes new guidelines for evaluating and regulating proposed development in and around critical areas in Whatcom County. Its preamble states that the temporary critical areas ordinance is designed to set standards to protect the public while allowing careful development around critical areas, and that the ordinance seeks to specify the framework that will be applied to define areas considered critical. As such, it appears to be more than an administrative action.

While conceding that the ordinance is a legislative act, the majority maintains that it is not subject to a referendum

because the ordinance falls within the public health and safety exception in the Whatcom County Code. As set forth by the majority, article 5, section 5.50 of the code provides as follows:

> The second power reserved by the people is the referendum. It may be ordered on any act, or bill, or ordinance, or any part thereof passed by the County Council except such ordinances as may be necessary for the immediate preservation of the public peace, health or safety or support of the county government and its existing public institutions.

(Italics omitted.) Majority, at 353.

The majority then notes that the Whatcom County Council "somewhat routinely" declared that enactment of the Temporary Critical Areas Ordinance would promote the public health, safety and general welfare. Majority, at 353. Without explanation, the majority concludes that "this nevertheless met the requirements for the exception". Majority, at 353. Then, as if anticipating disagreement, the majority explains that the "immediacy" requirement was satisfied "by the September 1, 1993 statutory deadline, which preceded the November 3, 1993 referendum election". Majority, at 353.

There are several problems with this conclusion. In the first place, the statutory deadline for the temporary critical areas ordinance was March 1, 1992. RCW 36.70A.060(2). Whatcom County asked for and received time extensions, and adopted its critical areas ordinance on June 23, 1992. Research has disclosed no deadline of September 1, 1993, that is applicable either to critical areas ordinances or to comprehensive land use plans. If such a deadline does exist, it would appear that adoption of the ordinance in 1992 eliminates any element of immediacy with regard to a 1993 deadline.

Furthermore, if statutory deadlines could be used to meet the "immediacy" requirement, then the power of referendum would be placed in considerable jeopardy and legislative declarations of emergency would be rendered virtually meaningless. This court discussed the purpose of emergent legisla-

tion in *State ex rel. Gray v. Martin*, 29 Wn.2d 799, 809, 189 P.2d 637 (1948):

> The purpose of emergent legislation is to enable the legislative body to provide immediate action in order to prevent or remedy a condition or situation which is of such a nature that it demands immediate attention when to postpone such action would result in serious injury or damage to the people, government, or community directly concerned.

The *Gray* court cited previous cases upholding or denying legislative declarations of emergency and observed that in some it held that, unless the legislative act is in fact immediately necessary, all other factors are irrelevant, and the legislation will not be upheld as emergent. *Gray*, at 806. The *Gray* court also cited cases holding that an emergency does not mean expediency, convenience, or best interest, and that "promotion of the public welfare" is not a criterion by which the court may be guided in determining whether or not an emergency exists. *Gray*, at 807. Another case stated that, with reference to a legislative declaration of emergency, it would " 'be scandalous indeed if the constitutional right of referendum could be thwarted by the mere use of false labels . . .' " and that the highly beneficial character of the act does not establish " 'that it is necessary for the immediate public peace, health or safety . . ..' " *Gray*, at 807 (quoting *State ex rel. Kennedy v. Reeves*, 22 Wn.2d 677, 681-83, 157 P.2d 721 (1945)).

Other authorities agree that a mere statement that passage of the ordinance is necessary for immediate preservation of public peace may not suffice. 5 Eugene McQuillin, *Municipal Corporations* § 16.56, at 275 (3d ed. 1989); Trautman, at 75. Here, the temporary critical areas ordinance did not even say that its adoption was necessary for the immediate preservation of the public peace, health, or safety. Rather, it simply stated that its enactment "will promote the public health, safety, and general welfare". Clerk's Papers, at 24. Thus, the county council did not characterize the ordinance as emergency legislation immune from referendum under

the county code, nor should this court regard it as such. While highly beneficial, the planned development of critical environmental areas does not qualify as emergency legislation. Thus, it is not excepted from referendum under article 5, section 5.50 of the Whatcom County Code.

Finally, I neither agree nor disagree with the majority's analysis of the Planning Enabling Act because I do not see what conclusion the majority draws from that analysis. The majority cites no provision in the Planning Enabling Act that prevents the exercise of referendum rights. Suffice it to say that I, too, think that the Planning Enabling Act and the Growth Management Act can be read consistently and harmoniously to carry out their intended legislative purpose, and that this purpose is not thwarted by allowing referendum rights with regard to critical areas ordinances.

In conclusion, I note that the content of the referendum is not at issue in this case, and I will not comment on it. What is at issue here is the right of the voters of Whatcom County to challenge an ordinance enacted by their county council. I can see no reason why this court should conclude that the referendum rights granted such voters under the Whatcom County Home Rule Charter are in conflict with the statutes governing passage of critical areas ordinances. Accordingly, I would affirm the Superior Court's grant of summary judgment upholding the referendum amending portions of Whatcom County's temporary critical areas ordinance.