[No. 37389-7-I. Division One. September 9, 1996.]

JOHN POSTEMA, *Appellant*, v. SNOHOMISH COUNTY, ET AL., *Respondents*.

---

[15]145 Wash. 25, 258 P. 836 (1927).

[16]*Bellingham Am. Publ'g Co.*, 145 Wash. at 28.

[17]*Bellingham Am. Publ'g Co.*, 145 Wash. at 27-28, 30.

*Robert C. Rowley* and *Patterson, Rowley & Schwimmer,* for appellant.

*James H. Krider, Prosecuting Attorney* for Snohomish County, and *Thomas H. Robertson, Deputy; Norm Maleng, Prosecuting Attorney* for King County, and *H. Kevin Wright, Deputy; Steven J. Peiffle* and *Bailey, Duskin & Peiffle, City Attorney* for Arlington; *Carol A. Morris, John D. Wallace, James E. Haney, W. Scott Snyder,* and *Ogden Murphy Wallace, P.L.L.C., City Attorneys* for Bothell, Edmonds, and Mukilteo; *Thomas C. Evans, City Attorney* for Brier; *Walter C. Wagner, City Attorney* for Darrington; *Michael Weight, City Attorney* for Everett, and *James D. Iles, Assistant; Donald J. Lyderson, Cheryl L. Beyer,* and *Lyderson & Associates, City Attorneys* for Granite Falls and Monroe; *Timothy X. Sullivan, City Attorney* for Lake Stevens; *John P. Watts* and *Riach, Gese, Seather & Watts, City Attorney* for Lynnwood; *Grant K. Weed* and *Allendoerfer & Keithly, Inc., P.S., City Attorney* for Marysville and Snohomish; *Scott M. Missall* and *Short, Cressman &*

Burgess, *City Attorney* for Mill Creek; *Gregory C. Schrag, City Attorney* for Mountlake Terrace; *Thomas D. Coughlin, City Attorney* for Stanwood; *Bruce E. Jones* and *Newton-Kight, City Attorney* for Woodway; *Rodney L. Brown* and *Marten & Brown, LLP,* and *David A. Bricklin* and *Bricklin & Gendler* for Puget Sound Regional Council; *Steven L. Gross; Lisa M. Marshall* and *Kenyon & Sullivan, P.S.*; and *Mark R. Bucklin* and *Keating, Bucklin & McCormack, P.S.,* for respondents.

*Richard D. Shepard* on behalf of Northwest Legal Foundation, amicus curiae.

ELLINGTON, J. — John Postema is a resident of rural Snohomish County. He appeals dismissal of his suit challenging constitutionality of certain statutes of the Growth Management Act (RCW 36.70A.210 and .340), and actions taken by the county thereunder. Because Postema has standing to raise only one issue, and that issue is nonjusticiable, dismissal was appropriate and is affirmed.

RCW 36.70A.210 requires a county's legislative authority to adopt a county-wide planning policy in cooperation with the cities located in the county, by convening a meeting with city representatives to establish a "collaborative process that will provide a framework for the adoption of a county-wide planning policy," which is then used as a framework to develop county and city comprehensive plans. Postema argues that this statute creates a regional governmental body which violates the constitutional principle of one person, one vote. Because this principle applies only where an exercise (or possible exercise) of

governmental powers is involved, which is not the case here, Postema's equal protection rights are not violated.

## Background

The Growth Management Act requires the legislative authority of certain counties to meet with its constituent city representatives "for the purpose of establishing a collaborative process that will provide a framework for the adoption of a county-wide planning policy." RCW 36.70A-.210(2)(a); RCW 36.70A.040. A C-WPP is a written policy statement used "solely for establishing a county-wide framework from which county and city comprehensive plans are developed and adopted[.]" RCW 36.70A.210(1).

Already at work in Snohomish County at the time the Act was passed was an informal intergovernmental planning group called Snohomish County Tomorrow (SCT), which included elected officials from the county and its constituent cities and towns. Following passage of the Act, SCT drafted a county-wide planning policy, which the Snohomish County Council adopted as Snohomish County Ordinance 93-004 in February, 1993. The following year, the Supreme Court ruled that this ordinance was not subject to referendum because it did "not establish, dissolve, or modify any legal rights . . . [but] merely establish[ed] very general goals governing such issues as development of urban and rural areas, housing and transportation[.]" *Snohomish County v. Anderson*, 123 Wn.2d 151, 154, 868 P.2d 116 (1994) (*Anderson* I).

Several months after this ruling, Postema filed a complaint against Snohomish County, the municipalities that comprise Snohomish County, King County, and the Puget Sound Regional Council. Postema argued that RCW 36.70A.210 creates a regional government, violates the principle of one person, one vote and unconstitutionally alters the police powers of the county and the cities. He further argued that RCW 36.70A.340 is an unconstitu-

tional delegation of sanctions authority to the governor. On grounds that the statutes are unconstitutional, he argued that the ordinance was ultra vires and sought to void various interlocal agreements adopted under the ordinance. Postema also sought to recoup taxpayer funds dispersed under these agreements.

The Respondents moved to dismiss Postema's claims, arguing, inter alia, that he lacked standing and did not present a justiciable issue. King County moved for dismissal on grounds that Postema did not request any relief from King County.

Then, before the trial court heard Respondents' motion to dismiss, the Supreme Court again analyzed the ordinance in light of RCW 36.70A.210, and held the ordinance was not ultra vires because, as stated in *Anderson* I, the statute did not affect citizens' legal rights, and because the statute did not "alter the land-use powers of the cities." *Snohomish County v. Anderson*, 124 Wn.2d 834, 842, 881 P.2d 240 (1994) (*Anderson* II).

■■ The trial court dismissed all of Postema's claims on standing and justiciability grounds, reasoning that the statute only established a "framework" for further action and that the case was not ripe because no comprehensive plan affecting anyone's legal rights had yet been adopted. In making its ruling, the trial court considered numerous materials outside the pleadings and acknowledged that the hearing was essentially a motion for summary judgment. We therefore review the judgment de novo. *Safeco Ins. Co. v. Butler*, 118 Wn.2d 383, 394-95, 823 P.2d 499 (1992).

## Standing and Justiciabililty

■■ A party seeking to challenge constitutionality of a statute must demonstrate that the statute has operated to that party's prejudice. Absent a personal stake in the challenge, a party lacks standing to bring the suit. Absent a party with standing, courts lack jurisdiction to consider the challenge. *High Tide Seafoods v. State*, 106 Wn.2d

695, 701-02, 725 P.2d 411 (1986); *appeal dismissed*, 479 U.S. 1073, 107 S. Ct. 1265, 94 L. Ed. 2d 126 (1987).

■ Further, a challenge must be justiciable, which requires an actual dispute between parties having opposing interests. A mere disagreement that is speculative or that cannot be conclusively resolved does not present a justiciable issue and therefore is subject to dismissal. *See Anderson II*, 124 Wn.2d at 840 (citing *DiNino v. State*, 102 Wn.2d 327, 330-31, 684 P.2d 1297 (1984)); *High Tide Seafoods*, 106 Wn.2d at 701-02; *see also S.A.V.E. v. Bothell*, 89 Wn.2d 862, 866, 576 P.2d 401 (1978).

## Equal Protection

The principal question is whether RCW 36.70A.210 creates a regional government that violates the principle of one person, one vote. Postema argues he was underrepresented when city and county officials met to develop "a framework for the adoption of a county-wide planning policy" because, as a rural resident, he cannot vote for any of the city representatives that attend the meeting, while city residents can vote for both the county and city representatives.

■ Equal protection requires that the votes of citizens be of equal weight. *Board of Estimate v. Morris*, 489 U.S. 688, 692-94, 109 S. Ct. 1433, 103 L. Ed. 2d 717 (1989); *Cunningham v. Metropolitan Seattle*, 751 F. Supp. 885, 887 (W.D. Wa. 1990). A party has standing to bring an action premised on violation of the one person, one vote principle, if that party resides in an underrepresented region. *Cunningham*, 751 F. Supp. at 887. Since Postema alleges that his region is underrepresented, he has standing to bring this claim.

■ The real issue is whether the vote dilution principle applies. Respondents argue that the city-county meeting group does not possess "governmental powers" and

therefore does not raise equal protection concerns.[1] Where an elected body possesses governmental powers, the one person, one vote principle supplies a fundamental protection of the value of the individual citizen's vote. *Morris*, 489 U.S. 692-96; *Hadley v. Junior College Dist.*, 397 U.S. 50, 54-56, 90 S. Ct. 791, 25 L. Ed. 2d 45 (1970); *Reynolds v. Sims*, 377 U.S. 533, 554-55, 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964).

Whether the city-county meeting group is an elected body is questionable; the membership of SCT is apparently flexible and not fixed. But whatever its membership, the entity which is formed when the county's legislative authority and the cities' representatives meet to establish a collaborative process is not an entity which possesses governmental powers.

When determining whether an entity has "governmental powers," it is necessary to evaluate not only powers that the entity has actually exercised, but also powers that the entity possesses but has not exercised. *Cunningham*, 751 F. Supp. at 890 (citing *Hadley*, 397 U.S. at 53). The case law has not established a bright-line test as to what constitutes "governmental powers" which will implicate the vote dilution principle. Instead, a finding of such powers turns on the particular facts of each case.

For example, an entity is not likely to raise equal protection concerns if it has a narrow purpose and if its effects are borne disproportionately only by a few, as where a water district is a "nominal public entit[y] . . . created by and chiefly benefiting a specific group of landowners," which could not impose taxes, enact laws, or "administer such normal functions of government such as the maintenance of streets, the operation of schools, or sanitation, health or welfare services." *Ball v. James*, 451 U.S. 355,

---

[1] Respondents also contend that Postema's equal protection argument "is meritless because [Postema] is not entitled to vote in municipal elections" and therefore "lacks standing to challenge [a] city resident's voting power in comparison to his own." This argument misunderstands Postema's claim, and in any event is not persuasive. Under such an analysis, a rural resident could never prove vote dilution.

368, 366, 101 S. Ct. 1811, 68 L. Ed. 2d 150 (1981). *See also Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.,* 410 U.S. 719, 723-28, 93 S. Ct. 1224, 35 L. Ed. 2d 659 (1973) (upholding a disproportionate voting scheme where the entity's authority was limited to providing for the acquisition, storage, and distribution of water in a 193,000-acre area, 85 percent of which was farmed by four corporations).

Conversely, an entity vested with broad powers is more likely to raise equal protection concerns. Such a case was litigated in *Cunningham*. Voters there challenged the constitutionality of the method of selecting the governing council for the Municipality of Metropolitan Seattle. Its governmental powers were relatively clear: Metro was statutorily authorized to perform such functions as appropriating funds, levying taxes, issuing bonds, condemning property, and adopting rules and regulations, the violation of which was punishable by fines. *Cunningham*, 751 F.2d at 890.

The development of a county-wide planning policy does not concern only a specific group of citizens. But unlike *Cunningham*, the meeting group which the statute requires the county council to convene is not authorized to impose taxes, pass any regulations punishable by fines, issue bonds, exercise police powers, or condemn property. Instead, it is only authorized to establish a collaborative process for the development of a county-wide planning policy. *See* RCW 36.70A.210(2)(a).

Certainly discussion of policy issues is a governmental function in the abstract, but if every discussion between county and city officials were construed as the creation of regional government, many meaningful and necessary communications between sovereigns would be prohibited. We therefore must take a closer look at the results of this collaboration.

Under the statute, collaboration is required to produce only a process and a framework. Here, the process resulted in a draft of a county-wide planning policy, which the

county council incorporated in an ordinance. This policy, however, is not binding on the cities; only the county legislative authority adopts the policy, RCW 36.70A-.040(3)(a), while the county and the cities each adopt their own comprehensive plans, RCW 36.70A.040(3)(d). Thus, as the Legislature explicitly stated, the challenged statute does not alter the land-use powers of cities, but only requires them to collaborate with the county before adopting their comprehensive plans. *See* RCW 36.70A.210(1), and (2)(a).

Nor does the statute alter the powers of counties. The statute requires that the county adopt a policy, but does not require adoption of any policy in particular. While Snohomish County was apparently satisfied with the draft which developed from the collaboration process, the statute does not require that result, and indeed the possibility that a county would adopt a policy disagreeable to cities is anticipated in the statute, which gives the cities a right to appeal. RCW 36.70A.210(6). Consequently, RCW 36.70A-.210 cannot be interpreted as vesting the city-county meeting group with meaningful governmental powers. Indeed, this lack of power is made apparent when one considers that the collaboration here culminated with the adoption of an ordinance that did not "establish, dissolve, or modify any legal rights." *Anderson I*, 123 Wn.2d at 154. We therefore conclude that the statute requires only collaboration between existing governmental entities and does not create a new governmental body nor authorize the exercise of governmental powers which would implicate the one vote principle.

Postema argues that the statute must mean something more than mere collaboration. For this position he relies on an agency decision which stated that county-wide planning policies have a higher priority, on certain issues, than a city's comprehensive plan. *Edmonds v. Snohomish County*, Central Puget Sound Growth Planning Hearings Board, Case No. 93-3-0005 at 30 (Oct. 4, 1993). After noting that the GMA is silent as to whether a county's

comprehensive plan takes precedence over a city's, the Board reasoned that the county had implicit authority to allocate a city's population, citing RCW 36.70A.100 (counties and cities sharing common borders must coordinate their comprehensive plans) and RCW 36.70A.110 (county shall designate urban growth areas). *Edmonds*, at 31. The Board then held that the county could allocate these levels "through the county-wide planning policies [sic] process of RCW 36.70A.210." *Edmonds*, at 31. Pending appeal of the Board's decision, however, this issue was rendered moot when the county conformed its population forecasts with the city's; consequently, the Supreme Court dismissed review. *Lynnwood v. Central Puget Sound Hearings Bd.*, (Order of dismissal, Feb. 22, 1996).

■ While we agree that the Legislature could clarify the GMA by resolving potential priority disputes between differing comprehensive plans, we decline to clarify this issue judicially absent an actual controversy. We therefore do not address the merits of *Edmonds'* reasoning except to note that this court has a mandate to construe a statute as constitutional wherever possible, see *Car Wash Enters., Inc. v. Kampanos*, 74 Wn. App. 537, 544, 874 P.2d 868 (1994), and we will not allow an agency's interpretation of a moot issue to resolve the constitutional question. We therefore conclude that RCW 36.70A.210 is facially constitutional.

Postema correctly notes that the statute is not entirely lucid, and argues that this lack of clarity has resulted in a de facto exercise of governmental powers. The passing of the ordinance itself does not show such an exercise, since the ordinance was passed by the county council, not the meeting group. Postema's argument depends upon the proposition that the policy cannot be developed or enacted without the "ratification" or "concurrence" of the cities. As we have discussed, the statute does not require or even contemplate such ratification.

Nor do the contents of the ordinance demonstrate a de facto exercise of governmental powers. Postema points to

the ordinance's goal of siting convenience stores within urban growth areas, which he claims will inconvenience him and unfairly impose cities' sales taxes upon him. We find these arguments too speculative to overcome the statute's presumption of constitutionality. *See Wash. Fed'n of State Employees v. State*, 127 Wn.2d 544, 558, 901 P.2d 1028 (1995). Further, the record contains no indication that this goal has affected the development of Postema's property or has adversely affected its value. Postema's argument therefore does not provide a justiciable controversy.

## Other Issues

Postema also argues that the Legislature has enacted an unconstitutional delegation of its power to local government. Postema postulates that RCW 36.70A.210 will have the practical effect of allowing the counties to dictate the cities' comprehensive plans. This point was tentatively raised in the now-dismissed *Edmonds* case. Postema's efforts to revive the issue here fail for lack of an actual controversy and lack of standing. As discussed above, there is no actual controversy because the record does not demonstrate conflicting city and county plans. Postema lacks standing to assert such a claim in any event because he resides in unincorporated Snohomish County, not in one of the cities that he claims would be prejudiced. And, as was noted in *Anderson* II, the Legislature specifically provided otherwise; *see* RCW 36.70A.210(1) ("[n]othing in this section shall be construed to alter the land-use powers of cities"); *Anderson* II, 124 Wn.2d at 842-43.

Postema also argues that the statutory scheme unconstitutionally increases the police powers of the cities by allowing them to legislate beyond their boundaries. This argument largely relies on the proposition that the statute vests the meeting group with governmental powers, an argument we have rejected. We have also concluded that the record does not demonstrate a de facto exercise of governmental powers. Hence, Postema presents no justiciable issue on this theory.

To the extent that Postema is otherwise arguing that the ordinance is ultra vires, we note that the Supreme Court has summarily rejected this argument:

> Because the ordinance does not establish, dissolve, or modify any legal rights with respect to the citizens, *Anderson* [I], and because RCW 36.70A.210(1) provides: "[n]othing in this section shall be construed to alter the land-use powers of cities", [the citizen-plaintiff] could not have presented a justiciable issue, and we affirm the trial court's dismissal of the counterclaim [that] Ordinance 93-004 was unconstitutional and ultra vires.

*Anderson* II, 124 Wn.2d at 842-43 (citing *Anderson* I, 123 Wn.2d 151). Therefore, dismissal of Postema's ultra vires claims was proper.

■ ■ Postema also attempted to justify his action under taxpayer standing and private attorney general theories. Neither theory has merit. The taxpayer standing doctrine allows a plaintiff to bring suit when he or she has a unique right that is being violated in a manner different from other taxpayers. *American Legion Post 32 v. Walla Walla*, 116 Wn.2d 1, 7, 802 P.2d 784 (1991). Absent vote dilution, which we have rejected, Postema has failed to argue such a unique right. The private attorney general doctrine has been rejected by the Supreme Court. *Blue Sky Advocates v. State*, 107 Wn.2d 112, 121-22, 727 P.2d 644 (1986).

Postema finally argues that the sanctions available under RCW 37.70A.340 are impermissible because the statute does not contain adequate procedural safeguards to prevent the governor from arbitrarily imposing such sanctions.[2] The record discloses no evidence that sanctions have been imposed. Like the Supreme Court, we decline to reach this issue in the absence of actual sanctions. *See Anderson* II, 124 Wn.2d at 840.

■ Amicus Northwest Legal Foundation argues that

---

[2]The statute provides that the governor can sanction a city or county for failing to meet the requirements of RCW 36.70A.210 by (1) revising allotments in appropriation levels, (2) withholding revenues; or (3) rescinding tax collection authority. RCW 36.70A.340.

RCW 36.70A.210 creates a city-county government in violation of CONST. art. XI, § 16, which provides that "[n]o such 'city-county' shall be formed except by a majority vote of the qualified electors voting thereon in the county." NLF also argues that RCW 36.70A.210 is void for vagueness. We do not address these arguments as Postema did not raise them below and the parties have not briefed them here. *See State v. Clark*, 124 Wn.2d 90, 101, 875 P.2d 613 (1994) (discretion to reach issues raised by amici); *see also* RAP 2.5(a)(3) (discretion to reach constitutional issues raised for the first time on appeal). We note, however, that the analysis of the CONST. art. XI, § 16 claim is similar to Postema's equal protection claim in that each claim posits the existence of a city-county government, which we conclude that RCW 36.70A.210 does not, on its face, create. We also note that the statute does not appear "substantially incomprehensible" or "so vague and indefinite as really to be no rule or standard at all." *A.B. Small v. Am. Sugar Refining Co.*, 267 U.S. 233, 239, 45 S. Ct. 295, 69 L. Ed. 589 (1925); *Exxon Corp. v. Busbee*, 644 F.2d 1030, 1033, (5th Cir), *cert. denied*, 454 U.S. 932, 102 S. Ct. 430, 70 L. Ed. 2d 239 (1981).

Affirmed.

COLEMAN and WEBSTER, JJ., concur.

Review denied at 131 Wn.2d 1019 (1997).